WILBUR F. CHAPMAN, EXECUTOR, *vs.* HENRY T. ALLEN AND ANOTHER, EXECUTORS.

Hartford Dist., Jan. T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

A father gave his daughter $1,000, and took from her the following receipt:—"Received of my father $1,000 as a part of my portion of his estate at his decease; refer to will." Three years afterwards the father made a will, by which he gave her "$1,400 in addition to what I have given her before;" and by a later codicil "$600 in addition to the $1,400 in my aforesaid will." Held that she was entitled to the $1,400 and the $600 without a deduction of the $1,000 first given her.

If the legacy had not been expressed as being in addition to what had been' given her before, it would yet have been payable without deduction on

account of the previous gift; a subsequent legacy, without refering to such an advancement, entitling the legatee to the whole of the legacy.

The executors paid her $1,000 as the balance of the legacies after deducting the $1,000, and she signed a receipt for the amount as "in full for the legacy left me and in discharge of all claim against the estate." At this time she supposed she was legally bound to have the first $1,000 deducted from the legacy. Held that she must be regarded as having signed the discharge under a mistake as to her legal rights and so as not bound by it.

The daughter, after the making of the will and codicil, in a conversation with her father recognized the obligation to have the $1,000 deducted from the legacy; but at this time she did not know that the will had discharged her from that obligation. Held that she was to be regarded as only recognizing the former obligation, and not as intentionally and with knowledge that she had been released, re-imposing upon herself a legal obligation to allow the deduction.

And held that the declaration of the testator made to his executors in the absence of his daughter, that the $1,000 given her in his lifetime was to be deducted from her legacy, was not admissible against her.

The statute permitting proof of the declarations of deceased persons concerning the matter in issue in suits by or against their representatives, (Gen. Statutes, 1888, § 1094,) does not include declarations of testators as to the meaning attached by them to the provisions of their wills.

[Argued January 4th—decided April 9th, 1888.]

ACTION to recover a legacy; brought to the Superior Court in Tolland County. The plaintiff was executor of Abigail B. Chapman, to whom the legacy was given by the will of her father, Alfred Allen. The defendants were his executors. The case was tried to the court before *Stoddard, J.* The facts were found and judgment rendered for the defendants, and the plaintiff appealed. The case is fully stated in the opinion.

*B. H. Bill* and *L. Sperry*, for the plaintiff.

1. The writing of 1869 has no bearing whatever upon the will. 1st, because it is evidence of a gift merely, and does not partake of a testamentary character ; 2d, because it is not referred to in the will so as to be made a part of it; 3d, because the subsequent will and codicil express the testator's latest wish, and control the writing of 1869, and would do so even if that writing had been executed at that time with testamentary formality ; and 4th, because under the language of the will the testator very clearly intended

that his daughter should take the specific sums therein mentioned, unaffected by his charities or kindnesses to her during his lifetime.

2. The claim of the defendants that the gift of 1869 was an advancement is not tenable. What constitutes an advancement is sometimes a very close question of fact. One thing is sure: an absolute gift is not an advancement. And while an advancement may be changed into a gift, a gift once made cannot be afterwards changed into an advancement by the intestate except with the consent of the donee. *Sherwood* v. *Smith*, 23 Conn., 516. The evidence of an advancement may be shown from book entries or other writings which express the intent of the deceased to make an advancement. This writing would have afforded evidence of an intended advancement under the statute of distributions if Alfred Allen had died intestate. But the doctrine of advancement has no application to this case for the simple reason that he died testate. It is impossible that the gift or payment of 1869 should operate as an advance payment of a legacy which was not in fact made until three years afterwards, and under the codicil, eleven years afterwards. *Dunham* v. *Averill*, 45 Conn., 61, is exactly in point. Not only that, but the will takes these so-called advancements into account and specifies the precise sum which Mrs. Chapman is to take in addition to previous gifts. "As payment or ademption of the legacy neither the note nor the receipts could avail, because the will was made long after they were given. Had the father died intestate these receipts would have been good evidence of advancement; but when a man makes his will all prior advancements are considered merged, and the testator must be deemed to have graduated the amount of his legacy to his daughter with reference to prior advancements." *Jones* v. *Richardson*, 5 Met., 252.

3. The defendants claim that they have paid Mrs. Chapman $1,052, which she received as in full and gave them a discharge. That they have paid her this sum is admitted. That the receipt which they hold can operate to discharge them from their duty of paying the balance is denied. If,

as claimed by the plaintiff, Mrs. Chapman was entitled to $2,000 under the will, the gift of 1869 to the contrary notwithstanding, then it goes without saying that the executors cannot discharge themselves from the duty of paying $2,000, by merely paying $1,052. It appears by the finding that at the time of the payment and receipt of April 10th, 1883, " the defendants stated as their understanding of the matter that the $1,000 referred to in the writing of 1869 was a part of Abigail's legacy, and that only the balance between that sum and the sum of $2,000 was due her, and this was the understanding of all parties at that time." If, as matter of fact, Mrs. Chapman was entitled ·to the full amount of her legacy under the terms of the will, then the parties have mistaken the law of the case. But whether it was a mistake of law or of fact, the receipt of 1883 is equally inoperative as a discharge. The claim of the defendants in this particular is neither legal nor just. *Northrop* v. *Graves*, 19 Conn., 548; *Stanley Rule & Level Co.* v. *Bailey*, 45 id., 464; *Kane* v. *Morehouse*, 46 id., 305. " A receipt is regarded as nothing more than evidence of payment, and may be explained or controlled by other evidence. And adding the words 'in full' to the receipt does not make it conclusive." *Bard* v. *Wood*, 3 Met., 74.

4. The rulings of the court as to the admissibility of evidence were erroneous. The language of the will once before the court must control the rights of the parties. *Woodruff* v. *Migeon*, 46 Conn., 236. That language is clear. The legatee, Mrs. Chapman, is clearly named; the amount which she is to take is made clear; the time when she is to take is made clear; and that she is to take it in addition to previous gifts is clearly stated by the testator in his own language. There are no ambiguities therefore to afford an excuse for the admission of extrinsic evidence. Take for instance the writing of 1869. That certainly could have no bearing whatever upon the will, because it was made three years before the will and eleven years before the codicil in which the will was re-affirmed. And that writing was not referred to in the will so as to become admissible on that ground.

*Crosby* v. *Mason*, 32 Conn., 487. And the same objection applies to the evidence offered to show that the testator himself had given directions to his executors as to what construction should be placed upon his will; and likewise the so-called admissions of Mrs. Chapman that the gift of 1869 was to be deducted from her legacy. All the evidence in question is in the same category, and has no bearing upon the will or the rights of the parties under the will. Numerous cases upon this point are carefully reviewed in *Dunham* v. *Averill*, 45 Conn., 61. The law is too well settled to be discussed. If the oral statements of the testator were received in evidence, the most that could then be said is that his oral statement is in conflict with his written testament, and the latter must of course prevail. And the same would be true if it were claimed to be a mistake of the scrivener. Id., 69 ; *Fairfield* v. *Lawson*, 50 Conn., 501. Take also the evidence received by the court to show that Mrs. Chapman admitted to her father that the payment of 1869 was an existing debt to be paid without interest from her portion of his estate. In other words, she admitted that the payment was an advancement, that is, she made an admission to her father as to what her legal rights were or were to be under his will. The impossibility of treating the gift of 1869 as an advancement has already been considered. It is equally impossible that her admissions as to what her legal rights were under the will should have any bearing on the case. Her admission, if any, "was merely of a point of law, and his opinion of the legal effect of the will, whether in his own favor or against him, is of no account." *Crosby* v. *Mason*, 32 Conn., 487.

*A. P. Hyde* and *A. F. Eggleston*, for the defendants.

1. In this state the law is well settled that a receipt in full will operate like a discharge, to defeat any further claim by the party giving it, unless executed under such circumstances of mistake, accident or fraud as would authorize a court of equity to set it aside ; also that such a receipt in full not under seal makes a good plea in bar. *Fuller* v.

*Crittenden*, 9 Conn., 401, 406; *Tucker* v. *Baldwin*, 13 id., 136, 143; *Hurd* v. *Blackman*, 19 id., 177; *Beam* v. *Barnum*, 21 id., 200; *Rose* v. *Persse & Brooks Paper Works*, 29 id., 256, 267. Under these decisions it is clear that the evidence showing that this receipt was not given under any circumstances of accident and mistake, and was not procured by fraud, but was given in pursuance of an agreement and understanding between the legatee and her father, made after the last codicil was executed, was clearly admissible. The declarations of the legatee and her father, showing or tending to show the existence of such an agreement and understanding between them, and that the payment of the $1,000 was to apply in satisfaction *pro tanto* of the legacy, were not only admissible under the decisions but also under the statute of 1881 relating to the declarations of deceased persons. That statute reads as follows:—" In suits by or against the representatives of deceased persons, declarations of the deceased relevant to the matter in issue may be received as evidence." See *Johnson* v. *Belden*, 20 Conn., 322.

2. But it is insisted by the plaintiff that in executing this receipt Mrs. Chapman was acting under a misapprehension of her legal rights. This claim is based upon the assumption that if she had seen fit to repudiate her agreement and understanding with her father, the law would not have compelled her to perform it; and upon the further one that she did not know that she could so violate her agreement, and that if she had known it she would have violated it. But there is nothing in the finding which justifies these assumptions. The finding on this point is as follows:—" I find that said receipt or writing was signed by said Wilbur and Abigail, and that it was signed and executed with full knowledge on the part of both of all the surrounding facts and circumstances, and without fraud, accident or mistake, or through the procurement of the defendants, unless there was a mistake or misapprehension as to her legal rights shown by the facts hereinafter stated." It is then further found as follows:—" At the time of the payment of the $1,052, on April 10th, 1883, the defendants stated as their understand-

ing of the matter that the $1,000 referred to in the writing of 1869 was a part of Abigail's legacy, and that only the balance between that sum and the sum of $2,000 was due her, and this was the understanding of all the parties at that time. But I find that such understanding on the part of said Abigail and Wilbur was not induced by the statement of the defendants, nor by any other act of the defendants. Said Abigail lived until September 22d, 1884, but made no further demand upon the defendants for any part of the sum now claimed, and although she saw them occasionally, she never expressed to them any dissatisfaction with the settlement made." We submit that there is nothing in this finding which indicates whether Mrs. Chapman regarded the obligation of her promise and understanding with her father as a legal or a moral obligation, or that if she had known that she was only morally bound she would have repudiated it. If she had believed that she was not legally bound to carry out her agreement with her father, and yet had voluntarily executed this receipt in compliance therewith, the receipt would be binding and conclusive. This is too clear for argument. And if the agreement between Mrs. Chapman and her father, entered into subsequent to the date of the codicil, that the $1,000 which he had advanced to her and for which he held her receipt was a just and subsisting debt which she owed him and which she was to repay without interest by having it deducted from her legacy, had been reduced to writing and signed by the parties at that time, it would hardly be claimed that the law would not enforce the contract. It is well settled that a testator may, in his lifetime, pay and discharge a legacy without changing his will. This doctrine seems to have been recognized by this court in the case of *Billings's Appeal from Probate*, 49 Conn., 456. See also *Paine* v. *Parsons*, 14 Pick., 318; *Richards* v. *Humphreys*, 15 id., 133; *Upton* v. *Prince*, Cas. temp. Talb., 71. In the case of *Dowd* v. *Tucker*, 41 Conn., 197, the testatrix had executed a will giving all her property to her nephew. On her death-bed she desired and intended to change her will by giving a piece of real estate to a niece.

The nephew agreed orally that if she did not change it, he would deed the piece of real estate to the niece after the property came into his hands. She, relying on his promise, made no change in her will. It was held by this court that this promise of the nephew could be enforced. In this case the testator had made his will, neglecting to make any reference to the application of the $1,000, for which he held a receipt dated before the will. Subsequent to the date of the will he agrees with his daughter that this $1,000 shall be applied towards what she was to receive from his estate. Had the daughter demurred, the father could and undoubtedly would have changed the will, so as to carry out the object intended. He relied upon his daughter's word, and as the event showed, was justified in so doing. She voluntarily consented to the application, and until her death, so far as appears, was satisfied with having kept faith with her dead father. Now that she has died, her husband is attempting to repudiate her agreement. The facts found show no ground upon which a court of equity should set aside the receipt as a receipt in full and discharge.

PARDEE, J. This is an action to recover the balance of a legacy to the plaintiff's testatrix under the will of Alfred Allen, of which the defendants are executors. The case was tried to the court in the Superior Court and judgment was rendered for the defendants.

The plaintiff has appealed, assigning the following reasons :—

1. That it appears by the will and codicil that Abigail B. Chapman was entitled to receive from her father's estate, one year after his death, the sum of $2,000; and that the court erred in holding that the payment of $1,052 was a payment in full of said legacy of $2,000.

2. That it appears by the writing of April 1st, 1869, that Mrs. Chapman received from her father $1,000, contemplating at that time that the same would be applied as a portion of her share of her father's estate; and that, nearly three years afterwards, March 14, 1872, her father executed

·a will in which he gave to her " the sum of $1,400 in addition to what I have before given her, the same to be paid in one year from my decease ; " and that more than eleven years subsequent, to the date of said writing of 1869, the testator reaffirmed his will by codicil, and gave his daughter, Mrs. Chapman, an additional legacy of $600. The court erred in holding that Mrs. Chapman's rights under the will and codicil were affected in any way by the gift or payment of 1869, because the will was made subsequent to said gift or·payment and is controlling.

3. That it appears that the defendants paid Mrs. Chapman $1,052 on April 10th, 1883, and took from her a receipt in full, and that no other payment has ever been made by them on account of the legacy ; also that at the time of that payment the defendants stated as their understanding of the matter, that the $1,000 referred to in the writing· of 1869 was a part of Mrs. Chapman's legacy, and that only the balance between that sum and the sum of $2,000 was due her, and that this was the understanding of all parties at that time. The court erred in holding that this payment of $1,052, or the receipt in full, operated to discharge Mrs. Chapman's right to the balance of the legacy of $2,000 bequeathed to her in said will and codicil, because said receipt was given by her under a mistake of law as to her legal rights under the will and codicil.

4. The court erred in holding that the sum of $1,000 mentioned in the writing of 1869 was an advancement ; first, because there could be no advancement except in case of intestacy ; and second, because the will was made subsequently to said gift or payment, and does not refer to or treat it as an advancement, but on the contrary specifically states that the bequest is made in addition to all previous gifts.

5. The rights of the parties at issue depend entirely upon the construction of the will and codicil. The question of construction is purely a question of law for the court to determine from the will itself. The writing of 1869 is not referred to in the will or codicil, and the court erred, therefore, in receiving the writing in evidence, either for the pur-

pose of explaining òr construing the will, or for the purpose of affecting the rights of the parties under the will, because the writing is extrinsic evidence and not admissible in the construction of the will.

6. The court erred in admitting in evidence the several oral declarations of the testator, made a few weeks before his death, in relation to said gift or payment and said writing of 1869, either for the purpose of explaining or construing the will, or for the purpose of affecting the rights of the parties under the will; because the meaning of his will and the wishes and intent of the testator cannot be otherwise known than by the language of his will.

7. The court erred in admitting in evidence the declarations of Mrs. Chapman as to the gift or payment of 1869, and as to her understanding of her rights under the will, because her right under the will is purely a question of law, and her declarations in that regard are irrelevant.

8. The court erred in admitting in evidence the receipt of April 10th, 1883, for any other purpose than to show the payment of $1,052 on account; because the receipt was given under a mistake of law, in that both parties believed at that time that the defendants had the legal right to deduct from the legacy of $2,000 the sum of $1,000, mentioned in the writing of 1869.

9. The court erred in admitting evidence to show that the testator had given money to Mrs. Chapman prior to April 1st, 1869, for the purpose of affecting the construction of the will or for any other purpose; first, because the language of the will is clear and no extrinsic evidence is admissible to explain it; and second, because the bequests therein made to her are declared to be in addition to all previous gifts, and the evidence was therefore irrelevant.

On April 1st, 1869, Abigail B. Chapman received $1,000 from her father, Alfred Allen, and gave him a writing as follows: " East Windsor, April 1st, 1869. Received of my honored father one thousand dollars as a part of my portion of his estate at his decease. Refer to will." This was signed by herself and Wilbur F. Chapman, the plaintiff, her husband.

There is no finding upon the point whether there was then any will of the father in existence. On March 14th, 1872, Alfred Allen, the father, executed a will, the fourth clause of which is as follows: " To ·my daughter Abigail B., wife ' of Wilbur F. Chapman, I give the sum of $1,400, in addition to what I have before given her." On April 27th, 1880, by a codicil thereto he bequeathed to her " six hundred dollars in addition to the fourteen hundred dollars, as in my last aforesaid will." The testator died in January, 1883, leaving the aforesaid will and codicil.

On April 10th, 1883, the defendants, as executors of the will, paid to Mrs. Chapman $1,052, and she, together with her husband, signed a writing in terms as follows: "Ellington, April 10th, 1883. Received from Henry T. Allen, executor of Alfred Allen's will, the dower of $1,052, in full for the legacy left me by last will, and discharge of all claims on my part against said executors and said estate." She died in September, 1884. Her husband, the plaintiff, is executor of her will and administrator *de bonis non*, and as such has instituted this suit against the executors of the will of Alfred Allen for the recovery of $1,000, as unpaid balance of legacy to his wife.

The defendants ·make the following answer:

On or about the first day of April, 1869, the said Alfred Allen, then in full life, paid to the said Abigail B. Chapman, then in life, the sum of one thousand dollars, with the intention on the part of the said Alfred, and with the understanding on the part of the said Abigail, that said sum be and was paid to her as an advancement towards her distributive share in his estate and toward the legacy or legacies which he should give to her by will, and said sum was received by the said Abigail as such advancement. On or about April 10th, 1883, the defendants, as the executors of the said Alfred, paid over to the said Abigail the sum of one thousand and fifty-two dollars, the amount to which the said Abigail was entitled under the will of the said Alfred, after deducting the said sum of one thousand dollars advanced to her as aforesaid by the said Alfred on or about April 1st, 1869, and the said Abigail

received said sum of one thousand and fifty-two dollars in full payment of said legacies and of all claims which she had against the estate of the said Alfred, and she and her said husband, the said Wilbur F. Chapman, then executed and delivered to the defendants as said executors in writing a release in full discharge of said legacies and of all claims of the said Abigail against the defendants as executors aforesaid and against the estate of the said Alfred Allen.

The plaintiff denied these averments, and replied in effect that he and his wife signed the discharge in full under a mistake as to their legal rights under the will, and as to the contents of the release; and that it was intended by them to be a receipt for $1,052 only.

It is found that the receipt "was signed and executed with full knowledge on the part of said Wilbur and Abigail of all said surrounding facts and circumstances, and without fraud, accident, or mistake, or through the procurement of the defendants, unless there was a mistake or misapprehension as to her legal rights shown by the facts hereinafter stated."

The defendants, to rebut the claim of the plaintiff that the receipt was executed by mistake or accident, or under a misapprehension of fact or law, or by the procurement of the defendants, and for the purpose of proving that it was executed with full knowledge and information on the part of Mrs. Chapman, and in accordance with an agreement and understanding between her and her father, offered evidence to prove that, subsequent to the date of the codicil, in a conversation with her father, she recognized the $1,000 referred to in the writing of April 1st, 1869, as a just and subsisting debt which she owed her father, and was to repay without interest by having the same deducted from whatever she had of his estate, and that this was the understanding between herself and her father.

The defendants also offered the declaration of said Alfred, made a few weeks before his death to the defendants, "that they would have to settle his estate," and "to remember that the sum of $1,000, which he let Abbie have in 1869,

was to be deducted from the legacy to her in his will; that he had taken a receipt from Abbie at the time he let her have the money, and that the receipt was in an envelope in his safe; also that said Alfred went to the safe and took therefrom the envelope in which the receipt was sealed up, showed it to the defendants, replaced it in the safe, and told them they would find the receipt in such envelope after his death." Also similar declarations by said Alfred to the defendants still later.

They also offered in evidence a claimed declaration of Mrs. Chapman, made by her at the time the will and codicil was first read to the family, immediately after the burial of her father's body, to wit: "I suppose I have had the most of mine," referring to her legacy.

In support of their answer the defendants offered in evidence the receipt of April 10th, 1883, which the court received as bearing upon the issue, the plaintiff objecting.

They also offered evidence tending to prove, and claimed to have proven, that prior to 1869 the testator had given to his daughter money at various times, amounting to $600, as absolute gifts; not to be charged to, not to be returned or repaid by her at any time in any form; that on April 1st, 1869, he delivered to her $1,000, for which he took the receipt and reference to a will recited above; that he intended that the money should be returned to his estate in the form of a deduction by her from the share of his estate which would probably go to her as one of his children; that he subsequently made a will in which he gave her $1,400 "in addition to what he had before given her"; also a codicil giving her "$600 in addition to the fourteen hundred" specified in the will; that after the date of the codicil, the daughter, in a conversation with her father, recognized the $1,000 referred to in the writing of April 1st, 1869, as still a just and subsisting debt which she owed to her father, in this sense, that it was to be repaid to his estate without interest by deducting it from whatever of that estate he should bequeath to her, and that it was the understanding of both of them that this sum of $1,000 should in that way be re-

turned to the estate; that subsequently to the codicil the testator showed the receipt to the defendants, whom he had named as his executors, and told them that the said sum for which he had taken Abigail's receipt was to be deducted from the legacy to her in his will; that upon the first reading of the will and codicil in her hearing Abigail said " I suppose I have had the most of mine"; that thereafter, on April 10th, 1883, when the executors paid $1,052 to her husband, at her request, they joined in a written receipt and acknowledgment that it was in full for the legacy left her by his last will and in discharge of all claims on her part against the estate; and that she died on September 22d, 1884, not having at any time demanded more. . This was received, notwithstanding the objection of the plaintiff. Upon evidence introduced by the plaintiff it is found that when the defendants paid the $1,052 on April 10th, 1883, they said to Mrs. Chapman that they understood the $1,000 of April 1st, 1869, to be a part of her legacy, and that she was then entitled to the balance only; that this was then the understanding also of her and of her husband; but that her understanding was independent of any act or statement by the defendants.

The delivery on April 1st, 1869, of $1,000 by the testator to Mrs. Chapman was of a portion of a father's estate to a daughter, not to be repaid in any event, but to be deducted from her inheritance. The reference to a will in the receipt which she gave therefor was presumably to one then in existence, by the terms of which she would be entitled to more than that sum. So far as such will and the receipt were concerned the latter would control the former; and her right, upon the death of her father leaving such will, would have been to the remainder, deducting that sum.

The father died, however, leaving a will, executed at a date later than that of the receipt, by which he gave her a legacy of the specific sum of $2,000. And when there has been the delivery to a child by a father of a sum of money not to be repaid in any event, but as a portion of the child's inheritance, and there is by a will subsequently executed a

specific legacy without reference to the former delivery, the child is entitled to the whole of the legacy. The will is the last and controlling utterance of the testator. If he says therein that the child shall receive the specific legacy, of legal necessity he says that he has thereby converted the previous delivery into an absolute gift as of the time when made. Moreover the will before us in express terms requires the executor to pay a legacy of a specific sum to Mrs. Chapman in addition to all previous gifts to her.

The defendants introduced evidence tending to prove that after the execution of the will there was a conversation between Mrs. Chapman and her father in which she recognized her obligation to deduct the $1,000 received in 1869 from her inheritance, and that this was the understanding of both. Assuming this fact to have been proven, yet there is no finding that when speaking she had knowledge that he had executed a will after the receipt, by the terms of which he had released her from her obligation.

Presumably she was reaffirming the obligation which she knew to be upon her because of the execution of a receipt for money delivered after a will. Therefore we are not to impute to her words greater force than this. We are not to say that she intentionally, with knowledge that she had been released, reimposed upon herself the legal obligation to deduct $1,000 from her inheritance.

It is found that Mrs. Chapman signed the discharge without mistake, " unless there was a mistake or misapprehension as to her legal rights shown by the facts hereinafter stated." And one of the facts subsequently stated is this:— when she signed it, she understood that the $1,000 of April, 1869, was to be a part of her legacy and that she was then entitled to the balance only.

This can be interpreted no otherwise than as a finding that she understood as a matter of law, under the receipt and will, that she could not compel payment of more than $1,000; that the bar was not simply moral, because of her conversation with her father, but absolutely legal. And a

discharge of an undisputed debt of $2,000 for $1,000, made in mistake of law, is not binding.

But beyond all this, it is to be remembered that the legal effect of the legacy to Mrs. Chapman, with the accompanying words—" in addition to what I have before given her," is to be ascertained and declared by the court from the words of the will, unassisted by proof of declarations by the testator as to his understanding of them. The statute permitting proof of the declarations of deceased persons concerning the matter in issue, in suits by or against their representatives, does not include declarations by testators as to the meaning attached by them to the provisions in their wills. A will must still declare its own meaning by the mouth of the court.

There was error in the reception of the declarations of the testator to the defendants, in the absence of Mrs. Chapman, that the $1,000 delivered by him to her in 1869 should be deducted from the legacy to her. These declarations were received upon this question, namely, Did she have knowledge of her legal rights when she executed the discharge of 1883? Plainly those declarations, unknown to her, in nowise tended to prove such knowledge on her part.

There is error in the judgment complained of and it is reversed.

In this opinion LOOMIS and BEARDSLEY, Js., concurred. PARK, C. J., and CARPENTER, J., dissented.