JOHN FRAZER vs. CHARLES G. WELD, executor.

Suffolk.    December 10, 1900. — January 7, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

A will contained the following provision: "I give and bequeath to each one of the
    servants who at the time of my death shall have been in my employ at my home-
    stead or at the stable connected therewith, a period of four consecutive years,
    the sum of one thousand dollars each.  I do not, however, by this legacy give
    any sum or sums of money to any person or persons in my employ at the Faulk-
    ner Farm, or upon my yacht."   Held, that the word "homestead" was used in
    a restricted sense to mean "dwelling-house," and that the bequest was intended
    only for house servants and stable hands, and did not include a man who worked
    for four consecutive years on the grounds about the homestead, and for two of
    the years as watchman, and whose work in the house was to carry in wood or
    coal or once in a while to move heavy furniture.  Held, also, that the mention
    of persons employed at the Faulkner Farm or upon the testator's yacht was
    merely intended to make clearer what the testator meant by the word "servants,"
    and was not intended to exclude one who had worked as a house servant or
    stable hand for four consecutive years, in case he also had worked at the Faulkner
    Farm or on the yacht.

CONTRACT to recover a legacy of $1,000 under the will of
William F. Weld, late of Brookline, deceased, which the plain-
tiff alleged was bequeathed to him as one of the servants em-
ployed at the homestead of the testator.    Writ dated November
8, 1899.

The will contained the following provision: "I give and be-
queath to each one of the servants who at the time of my death
shall have been in my employ at my homestead or at the stable
connected therewith, a period of four consecutive years, the sum
of one thousand dollars each.   I do not, however, by this legacy
give any sum or sums of money to any person or persons in my
employ at the Faulkner Farm, or upon my yacht."

The case was tried in the Superior Court, before Sheldon, J.,
and by him reported for the consideration of this court.   The
material portions of the evidence, as shown by the report, are
fully stated in the opinion of the court.   The ruling of the judge
is explained by the following extract from his report:

"At the close of the evidence I ruled that on the evidence
the plaintiff was not entitled to recover; but for the purpose of
settling the disputed questions of fact, whether the plaintiff's

employment had been continuous for four consecutive years prior
to the death of the testator, and whether the work done by him
at the Faulkner Farm was under a distinct employment, I sub-
mitted to the jury the following question : ' Was the plaintiff,
for four consecutive years next prior to January 8, 1893, em-
ployed as a servant by William F. Weld at his homestead ? '
instructing them that, in answering it, they were not to consider
the character of the employment, that is, whether or not the
plaintiff was a servant within the meaning of the will; and I
instructed them that if they found that there was a general
employment to work on the homestead estate, not distinguishing
thereby between the house, the stable, and the grounds, the
mere fact that he was occasionally sent to work at Faulkner
Farm would not prevent an affirmative answer.

" The jury answered that he was so employed. I directed a
verdict for the defendant. Subsequently, on the defendant's mo-
tion to set aside this finding [that is, the special finding], and in
order to separate questions of fact from questions of law, I or-
dered it set aside so far and only so far as it finds that the plain-
tiff was a servant within the meaning of the will."

If, on the evidence, the jury would have been justified in find-
ing that the plaintiff was a servant within the meaning of the
will, and if the plaintiff was not precluded, as a matter of law,
from recovering, by reason of the testimony in regard to his
working at the Faulkner Farm, then, by agreement of the par-
ties, judgment was to be entered for the plaintiff for $1,000, with
interest from January 8, 1894; otherwise, judgment was to be
entered on the verdict.

*G. Hay, Jr.*, for the plaintiff.

*E. W. Hutchins*, for the defendant.

BARKER, J. The testator's mansion and its stable were upon
moderately large grounds, and this place was usually spoken of
as the Hill. He had another place about a mile away, called
the Faulkner Farm, and a yacht. In his employment at what
in his will he calls his " homestead," and also " at the stable
connected therewith " were persons whom he designates as
" servants." There were also persons in his employment at the
Faulkner Farm, and upon his yacht.

At the Hill, besides the corps of domestics in the mansion, and

the men at the stable, there were a number of men working upon the grounds. The plaintiff was one of these, and although he did some of his work in the house, he did not contend at the trial that he was a domestic or household servant. The executor testified that the whole number of persons employed at the Hill, including those employed in the house, the stable and on the place, was ten or twelve, and that the Faulkner Farm had on it simply farm laborers. Nothing appears as to the number or work of the persons employed upon the yacht.

The plaintiff testified that he went to work for the testator in the year 1887 at the homestead estate; that with an idleness of four and one half days when excused from illness he worked until the testator's death, on January 8, 1893; that his principal work was plowing, chopping, mowing, working around the house, working in the stable, and in the mansion; that for two of the years he was watchman about the place; that his work in the mansion was carrying in wood and coal, and once in a while moving heavy furniture; that he lived and had his meals in a house of his own; that he was paid by the month at the rate of $1.75 a day in winter and of $2 a day in summer; also that he used to work on Faulkner Farm once in a while three or four days at a time, never as much as a month at one time, and that he never belonged to the gang of laborers employed there.

Evidence introduced by the defendant tended to show that there were many more days than four and one half when the plaintiff did not work; that in the year 1889 he was laid off from January 8 to February 8; and that on several occasions he worked at Faulkner Farm as much as a month at a time. The only effect of the special finding, taken with the instructions under which it was rendered, and modified by the order setting it aside in part, seems to be that the plaintiff's employment at the Hill was continuous for the four consecutive years up to the time of the testator's death, and that the plaintiff was not a person in the testator's employment at Faulkner Farm.

We are not informed as to the particulars of the service of any of the other persons in the employment of the testator at the Hill, and do not know what persons upon any possible construction of the will might take under the bequest.

The clause of the will which it is contended gives the plaintiff a legacy is as follows:

" *Second.* I give and bequeath to each one of the servants who at the time of my death shall have been in my employ at my homestead or at the stable connected therewith, a period of four consecutive years, the sum of one thousand dollars each. I do not, however, by this legacy give any sum or sums of money to any person or persons in my employ at the Faulkner Farm, or upon my yacht."

There is some room for doubt as to the sense in which the words " servants " and " homestead " are used in the first of the two sentences, and also as to the office of the last sentence. The general rule is that the words of a testator favorable to the claims of the legatee are to be construed liberally and beneficially, and that the bounty ought to be extended as far as the express words of the bequest necessarily carry it. *Parsons* v. *Winslow*, 6 Mass. 169, 174. The word " homestead " in its technical legal sense means not only the dwelling and its appurtenances, but includes also the land on which they stand. *Eliot* v. *Thatcher*, 2 Met. 44, note. See *Taylor* v. *Mixter*, 11 Pick. 341, 347; *Cloyes* v. *Sweetser*, 4 Cush. 403, 405; *Aldrich* v. *Gaskill*, 10 Cush. 155, 158. But in the present instance we think that this testator used the expression " at my homestead " in the sense of " at my dwelling-house," rather than in the broader one of " at my home place " or " upon my residential estate." The stable, which he specifies, was upon the same land and was an appurtenance of his dwelling, and if he had used the expression " at my homestead " in its broad sense, as indicating his home place, he would not have followed with the words " or at the stable connected therewith."

We think therefore that the bequest was intended only for such servants as were employed in the mansion house or the stable, and not for those who worked out of doors upon the home place. It was to domestic servants and to stable hands.

If the plaintiff had been hired to work in the dwelling-house or the stable, or if the bequest had been to servants simply, perhaps it would have been immaterial that the plaintiff dwelt and had his meals at his own home, or that his work was mostly out of doors, or that his wages were reckoned by the day and paid

monthly. See *Ogle* v. *Morgan*, 1 De G., M. & G. 359 ; *Savile* v. *Yeatman*, 57 L. T. (N. S.) 475 ; *Townshend* v. *Windham*, 2 Vern. 546 ; *Blackwell* v. *Pennant*, 9 Hare, 551 ; *Booth* v. *Dean*, 1 M. & K. 560 ; *Thrupp* v. *Collett*, 26 Beav. 147. Cf. *Ex parte Meason*, 5 Binn. 167 ; *Jones* v. *Henley*, 2 Rep. Ch. 162. Upon these points we do not find it necessary to express an opinion, as we think the bequest is only to such servants as were hired to work in the house or the stable.

Whether the plaintiff is a legatee depends upon the general nature of his employment, and he was an out of doors laborer rather than a servant employed at the house or stable. The small proportion of his work done in the house or stable was merely incidental to his main employment, and did not bring him within the class of servants employed at either of those places for the necessary four consecutive years, within the meaning of the first sentence of the clause giving the bequest. He fails to take because he is not included in the class of legatees, and not for the reason that he is excepted from that class by force of the second sentence, as having worked at the Faulkner Farm. The second sentence does not seem to us to have been intended to except from the testator's bounty any person who would have shared it if the sentence had been omitted. We think it was added with an idea that in some way it might make more clear what the testator meant by the word "servants." For instance, if for four years there had been in the household a valet or a cook to whom the testator wished to give nothing, and who had sometime served upon the yacht, the testator would have been very unlikely to use such a roundabout way of excepting such a servant from the class of legatees.

Upon the whole, with more or less of doubt, we think the decision below was right.

*Judgment for the defendant on the verdict.*