EDWARD M. DAY, EXECUTOR, *vs.* BYRON P. WEBLER
ET AL.

First Judicial District, Hartford, January Term, 1919.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

A decree that one of two claimants in an interpleader suit had no right,
title, or interest in or to the legacy which was the subject-matter
involved, does not establish the right of the other claimant to it;
and until such adjudication has been made the executor cannot
secure the discharge he asks for.

The declarations of a testator to the scrivener and witnesses of his
will as to his intent in the use of a word or expression therein, are
inadmissible to control or vary the language of the instrument,
except in cases of equivocation or latent ambiguity.

In the present case the testatrix bequeathed $12,000 to *W*, and in case
of her death before the testatrix, to her "children." *Held* that
inasmuch as there was nothing in the will to indicate that the
word "children" was used with other than its strict and primary
meaning, evidence of the declarations of the testatrix to the wit-
nesses and scrivener of her will, to the effect that she intended the
word should have its usual signification, was inadmissible, but,
under the circumstances, harmless, since the court would have
been bound, as a matter of law, to reach the same conclusion
without the aid of these declarations.

Extrinsic circumstances may explain the language of a will, but they
cannot contradict, vary or control it.

The law does not presume that any woman, however old, is incapable
of bearing children.

Argued January 9th—decided February 19th, 1919.

ACTION of interpleader to determine the respective
rights of the respondents in and to a legacy of $12,000
under the will of Mary Jane Pomeroy of Hartford,
deceased, brought to and tried by the Superior Court
in Hartford County, *Burpee, J.;* facts found and judg-
ment rendered against Carrie Webler Loomis, from
which she appealed. *No error.*

*A. Storrs Campbell,* for the appellant (respondent
Carrie Webler Loomis).

*Noble E. Pierce,* for the appellee (respondent Byron P. Webler).

WHEELER, J.    The trial of the interpleader developed these facts: Mrs. Mary Jane Pomeroy, of Hartford, deceased March 15th, 1917, leaving a will, the fourteenth paragraph of which was: "14. I give and bequeath to Keziah L. Webler, of Bristol, . . . and in case of her death before mine, then to her children, $12,000." Keziah Webler predeceased Mrs. Pomeroy.

Upon the hearing on the interpleader, Bryon P. Webler, who is the sole child of Keziah Webler, claimed the entire legacy.   Mrs. Carrie W. Loomis claimed the right to share this legacy equally with Byron P. Webler. Her claim was that the textatrix intended by the use of the term "children" to include her.

Mrs. Loomis was a niece of Keziah Webler, and upon the death of her parents when she was about twelve years of age, she came to live in the home of Keziah Webler and her husband, Oramel, and so continued for about two years.   Mr. and Mrs. Webler said to some of their friends and relatives at different times that they had taken Mrs. Loomis as their daughter, and they told her to treat them as if they were her parents and they treated her as their daughter.   She was generally known and called Carrie Webler, but she addressed Keziah Webler and her husband as uncle and aunt.   Carrie left the home of her uncle and aunt because of the unkind treatment of her uncle, and during the next two years she occasionally visited them.

When about eighteen she was married, in 1869, under the name of Carrie Webler, to Charles M. Loomis. In the following fourteen years Mrs. Loomis occasionally visited her uncle and aunt.   At one time her aunt kept one of her children for six or seven months, while Mrs. Loomis was sick, and otherwise assisted her in

various ways. . Mrs. Loomis left her husband and thereafter at one time lived in the family of Keziah's son about three months, and during this time Mrs. Loomis frequently called on Keziah.

While Mrs. Loomis was living in Bristol with the Weblers, in 1864–1866, she visited, with her aunt, Mrs. Pomeroy several times, and Mrs. Pomeroy visited the Weblers in their home. Mrs. Pomeroy knew the circumstances in which the Weblers had taken Carrie into their family, and she treated her with kindness and sympathy. Sometimes Carrie addressed Mrs. Pomeroy as Aunt Jane. After Mrs. Pomeroy removed to Hartford, about 1870, Keziah Webler, accompanied . by Carrie, made calls on her at her home there on two or more occasions. Mrs. Loomis never claimed to be the child of Keziah Webler. When Mrs. Pomeroy executed her will in 1911 Keziah Webler was seventy years of age and deceased June 15th, 1916, leaving as her only child Byron P. Webler. Two years before the death of Keziah Webler, Mrs. Loomis remained in her home with her for several days. Keziah Webler's son Byron has a son Harry, who lived with Mrs. Webler from the time he was three years old, in 1881, until he was sixteen, and was brought up by her. Mrs. Pomeroy sometimes spoke of Harry as Byron P. Webler's brother, and referred to Byron P. Webler and his son as Keziah's children.

Mrs. Pomeroy executed four wills prior to the will before us, in which she made a bequest to Keziah Webler · and in case of her death before her own, to her children in the terms of the fourteenth paragraph of the will before us.

The trial court reached the conclusion that the evidence produced by Mrs. Loomis was insufficient to establish her right to any part of the legacy given in the fourteenth paragraph of the will, and rendered

judgment that Mrs. Loomis "has no right, title, or interest in or to said fund of $12,000."

The court failed to adjudicate upon the claim of Byron P. Webler. This, we presume, was an inadvertence, since this claim was properly before the court for adjudication, and the executor cannot secure the discharge he prays for until the court designates the person to whom this legacy shall be delivered.

The appeal assigns a single error, the "permitting the scrivener of the will and the witnesess Thorpe and Redfield to relate declarations made to them by the testatrix regarding her intent in the use of the term 'children'" in the fourteenth paragraph of the will.

The testator's declarations of his testamentary intention, or as to the meaning of the words which the scrivener used, are not admissible except in cases of equivocation or, as it is sometimes called, latent ambiguity, as to the person or subject meant to be described, or unless the evidence is offered to rebut a resulting trust. This has been the doctrine of our court as early as *Dunham* v. *Averill*, 45 Conn. 61, 68, and was last reiterated in *McDermott* v. *Scully*, 91 Conn. 45, 49, 98 Atl. 350, where the precise ruling involved in this case was before us and decided adversly to the appellant's claim. A testator's intent is to be ascertained from the words of his will interpreted in the light of their context and of the surrounding circumstances, and "the court should place itself in the situation of the testator, surrounding itself by the facts which were before him, and then ascertain the meaning of the language it is called upon to construe." *McDermott* v. *Scully*, 91 Conn. 45, 50, 98 Atl. 350.

Mrs. Pomeroy was presumed to have used the word children in her will in its strict and primary meaning (*Bartlett* v. *Sears*, 81 Conn. 34, 39, 70 Atl. 33; *Leake* v. *Watson*, 60 Conn. 498, 508, 21 Atl. 1075), unless there

was in the will, construed in the light of the context
and surrounding circumstances, something showing a
contrary intent. 1 Schouler on Wills (5th Ed.) § 534.
There is nothing in the will showing such contrary
intent. What he has written determines the testator's
intent, and "where the language be clear and precise
and the person or thing exist and be accurately named,"
extrinsic circumstances surrounding the testator can-
not detach the language used from its primary signifi-
cance. Extrinsic circumstances may explain the lan-
guage of the will: they cannot contradict, vary, or
control it.

That Mrs. Pomeroy knew that Mrs. Loomis had
been regarded as a child by Mr. and Mrs. Webler,
does not make it at all probable that she used the
word "children" in her will intending to include Mrs.
Loomis. It is much more likely that the scrivener
naturally used the term children so that the legacy
should survive to all the children of the legatee, than
that he by inquiry as to the age of the legatee deter-
mined that no other child or children would be born
to her. The scrivener would be more apt to act in
the knowledge that there is no age in law beyond which
there is a presumption against the capacity of bearing
children.

The trial court reached the conclusion that upon a
consideration of the surrounding circumstances, to-
gether with the declarations of the testatrix, the con-
struction claimed by Mrs. Loomis could not be sup-
ported. A like conclusion must be reached if the
declarations of the testatrix are removed from consid-
eration. It follows that the error of the court in
admitting these declarations was harmless.

There is no error.

In this opinion the other judges concurred.