ROBERT SMITH CATTO vs. HENRY B. PLANT ET ALS.,
EXECUTORS.

Second Judicial District, Norwich, April Term, 1927.

WHEELER, C. J., MALTBIE, HINMAN, BANKS and ELLS, Js.

A testator's intent is to be ascertained from the words of his will,
interpreted in the light of their context and of the circumstances
surrounding him when he executed the instrument.

The meaning of the term "domestic servant" may vary widely under
differing circumstances and, when used in a will, its significance
is always dependent upon the specific intent of the particular
testator; but ordinarily it may be defined as a servant whose
work is so connected with the maintenance of his master's estab-
lishment, including the house and the land connected with it,
that his duties, whether performed in or outside the house,
relate to the running of the establishment in providing for and
ministering to the wants and comforts of the master's household.

The testator in the present case gave $1,000 "to each of the domestic
servants in my employ at the time of my death who shall have
been continuously in my employ for the period of ten years
prior thereto." The testator, who was a man of great wealth,
maintained a large estate of forty-four acres on which were a
mansion house, a bungalow and several cottages for the use of
his servants. The plaintiff was employed continuously by him
for more than ten years prior to his death, first as assistant gar-
dener and later as head gardener, having the care of the shrub-
bery and the vegetable and flower gardens, with no regular
duties to perform in the mansion house. Until his marriage he
lodged in a boarding house, and thereafter in a separate cottage,
both of which were furnished and maintained upon the premises
by the testator. Held that the plaintiff was a "domestic servant"
within the meaning of the will.

Argued April 26th—decided June 6th, 1927.

ACTION to recover a bequest alleged to have been
made to the plaintiff in the will of Morton F. Plant,
late of the town of Groton, deceased, brought to the
Court of Common Pleas for New London County and
tried to the court, *Waller, J.*; judgment for the plain-
tiff for $1,364, and appeal by the defendants. *No
error.*

Catto v. Plant.

*Charles B. Whittlesey,* for the appellants (defendants).

*John T. Barry,* for the appellee (plaintiff).

BANKS, J.   Morton F. Plant died November 4th, 1918, leaving a will dated October 16th, 1918, the third paragraph of which contained the following bequest: "To each of the domestic servants in my employ at the time of my death who shall have been continuously in my employ for the period of ten years prior thereto the sum of one thousand ($1,000) dollars." The plaintiff had been continuously in the employ of Mr. Plant for ten years prior to the latter's death, first as an assistant gardener and later as head gardener, and claimed to be entitled to such legacy as one of the "domestic servants" in his employ at the time of his death.

The question to be determined upon this appeal is not the abstract question whether a gardener is a "domestic servant," but the concrete question is whether, in this clause of his will, the testator intended to include the plaintiff among the domestic servants who had been in his employ at the time of his death continuously for the period of ten years prior thereto. "A testator's intent is to be ascertained from the words of his will interpreted in the light of their context and of the surrounding circumstances, and 'the court should place itself in the situation of the testator, surrounding itself by the facts which were before him, and then ascertain the meaning of the language it is called upon to construe.'" *Day* v. *Webber,* 93 Conn. 308, 311, 105 Atl. 618. The record before us does not contain any portion of Mr. Plant's will other than the single clause we are asked to construe, and we are therefore deprived of such assistance in ascertaining his intent as might be gained from an

Catto v. Plant.

examination of the context of this clause, and a consideration of the will as a whole. The claimed corrections in the finding would simply substitute the language of the draft-finding for that of the finding as to matters which are not sufficiently material to affect the decision. The finding discloses the following facts: The testator, Mr. Plant, owned and occupied a large estate at Eastern Point, in the town of Groton, the house grounds covering about forty-four acres which were elaborately laid out and required the services of a number of men to maintain. The plaintiff entered Mr. Plant's employ in May, 1908, as assistant gardener and continued as such until the summer of 1912 when he was placed in charge of the gardening work on the home grounds and continued as head gardener until Mr. Plant's death. Plaintiff's work was in taking care of the garden where vegetables and flowers were grown and in the care of the shrubs on the home grounds, but he occasionally rendered services in connection with the delivery of vegetables to the kitchen and flowers for use in the house. He had no regular duties to perform in the mansion house. From September or October, 1908, until he was married, in 1913, plaintiff boarded with a woman who conducted a boarding and lodging house, in which eight or nine of those working on the estate boarded or lodged under an arrangement with Mr. Plant, and in a house located on the home grounds. After his marriage in 1913 plaintiff lived in a cottage on the home grounds furnished for his use by Mr. Plant.

The trial court reached the conclusion that the services performed by plaintiff upon the grounds of the Plant house concerned the home and contributed to the comfort and pleasure of those living in the home, and that plaintiff was a domestic servant within the class described in the third paragraph of the will.

Defendants appealed upon the ground that the court erred in holding that one who worked on the grounds, but who neither worked nor resided in the house of the testator, was a domestic servant. "The term 'domestic' has a widely varying meaning, and, while its primary significance relates to the house or home, it is often used in a vastly broader sense. Its significance must always be determined with reference to the subject matter and the relation in which it appears." *Kimball* v. *North East Harbor Water Co.*, 107 Me. 467, 78 Atl. 865. Definitions of lexicographers giving the primary meaning of the word are not particularly helpful, and precedents are only of limited authority upon the construction of the word "domestic" or the phrase "domestic servants" as used in a will, since their use in each case presents an individual problem which the court must solve, not merely from the language used, but from that language viewed in the light of all the other provisions of the will involved and of the surrounding circumstances.

Defendant cites upon his brief two English cases, *Ogle* v. *Morgan* (1852) 1 De G., M. & G. 359, 16 Jur. 277, and *Vaughan* v. *Booth* (1852), 13 Eng. L. & Eq. Rep. 351, 16 Jur. 808, each of which, as he correctly states, is practically identical with the case at bar. In the first case the bequest was "to each person as a servant in my domestic establishment," and in the second "to each of my domestic servants." In each case the plaintiff was a gardener and lived in a cottage furnished him by the testator. In each case it was held that the bequest was limited to servants living or working in the house and that the gardener was not included therein. *Ogle* v. *Morgan*, decided in 1852, was followed not only by *Vaughan* v. *Booth*, but by *In re Drax* (1887) 57 L. T. (N. S.) 475 (coachman

and groom living out of the house), and *In re Ogilby*
(1903) 1 Ir. R. (Ch. Div.) 525 (laundress living out
of the house), and was generally cited both in Eng-
land and in this country as authority for the proposi-
tion that the term "domestic servant" could not be
construed to mean an outdoor servant.

In the case of *In re Jackson* (1923) [L. R.] 2 Ch.
365, 38 A. L. R. 763, there was a bequest "to each of
my domestic servants who shall be in my service at
the time of my decease and who shall have been in
my service for ten years or upwards." It was held
that this bequest included testator's coachman, chauf-
feur and the gardener who lived in a cottage provided
for him at the country residence of the testator. Lord
Sterndale, Master of the Rolls, in discussing *Ogle* v.
*Morgan*, said: "If it really extends to this, that in
any will, under any circumstances, a 'domestic ser-
vant' can never mean an outdoor servant it must be
regarded as a dictum only, by which, with the great-
est respect, we are not bound, and which I am not
myself inclined to follow . . . I think the discussions
which have taken place show that seventy years have
perhaps somewhat changed the popular meaning of
the words 'domestic servant,' that the same prima facie
meaning is not necessarily to be attached to them as
was formerly the case. We must look at the intention
of the testator, examining all the circumstances of the
case, and, in particular, the fact that in this case he
was the employer of other kinds of labor. . . . A man
who cultivates vegetables for the household and looks
after the amenities of the garden, can, I think, be
called a domestic servant in the sense that he is em-
ployed to minister to the testator's home comfort and
enjoyment, even though he does not actually live in
the testator's house." In view of this case, *Ogle* v.
*Morgan* and the cases that followed it cannot be re-

Catto *v*. Plant.

garded as authority for the statement that one not
working and living in the house could not be consid-
ered a domestic servant.

Without, of course, attempting to formulate a def-
inition which would be applicable to all cases, we think
it may be said that ordinarily a domestic servant is
one whose service is connected with the maintenance
of the house and land connected with it and consti-
tuting the establishment of his employer in such a
way that his work and duties, whether in or outside
the house, have to do with the running of the estab-
lishment or estate in providing for and ministering
to the wants and comforts of the members of his
employer's household. In the case of the ordinary
family no doubt it would usually be the case that
such servant would be found living and working in
the house itself. It is apparent from the record that
Mr. Plant's household was not limited to those per-
sons who lived in a single house. There were upon the
home grounds the mansion house, a cottage and later
a bungalow sometimes occupied by Mr. Plant, and
four other houses in which his servants lived, as well
as the cottage in which plaintiff lived after his mar-
riage. Here was the domestic establishment of a man
of great wealth requiring for its maintenance the ser-
vice of many servants, who were housed—presumably
as convenience dictated—either in the mansion house
or any of the other houses upon the home grounds.
The master himself lived for a portion of the time
outside of the mansion house. Can it reasonably be
said that in the case of an establishment of this mag-
nitude only those persons who actually worked and
lived in the mansion house were members of the
household? It seems to us that those persons whose
work it was to assist in the running of this establish-
ment were all domestic servants in the employ of the

master of the establishment, whether they lived and worked in the mansion house, lived in the mansion house but worked in one of the other houses or about the grounds, lived in one of the other houses and worked in the mansion house, or lived in one of the other houses and worked about' the grounds. In an old English case which held a head gardener to be a household servant it was said: "For, though he did not live in the defendant's house, or within the curtilage (*intra mœnia*), he lived in the grounds within the domain." *Nowlan* v. *Ablett* (1835) 2 C., M. & R. 54. Here plaintiff lived and worked in the domain of this country estate, and the services he performed were rendered in and for the household of the master of the domain, and quite distinct as it seems to us from services rendered by an employee or laborer upon a farm or any other enterprise conducted apart from the household of the employer.

In *Frazer* v. *Weld*, 177 Mass. 513, 59 N. E. 118, the bequest was to "servants . . . at my homestead or at the stable connected therewith." The court, citing *Ogle* v. *Morgan*, held, "with more or less of doubt," that plaintiff who worked around the house and lived in his own house was "an out of doors laborer rather than a servant employed at the house or stable." In *Murphy* v. *Lawrence*, 218 Mass. 39, 105 N. E. 380, the bequest was "to each of my domestic servants, other than those named in the two preceding articles." The court held that an examination of the whole will, and especially of the two preceding articles, did not disclose an intention to include the plaintiff, a groom or stableman in the legacy. In *Lafrinz* v. *Whitney*, 233 N. Y. 107, 134 N. E. 852, the legacy was "to each person not heretofore named, who at the time of my death shall be in my service and shall then be customarily employed as part of my household in my

house." The court held that plaintiff, who was employed to watch the exterior of testator's New York house, was not included in the legacy, in view of the presence of the phrase "in my house." In each of these cases the question was determined by ascertaining the intention of the testator as expressed in the particular will under consideration. The problem of the trial court in the case at bar was to ascertain the intention of this testator as expressed in this clause of his will, placing itself in the situation of the testator and surrounding itself with the facts which were before him. In the absence of any limitations upon the language of this bequest to be found in the context, or of any contrary intention to be gathered from the will as a whole, and having in mind the character and extent of Mr. Plant's domestic establishment at Eastern Point, we cannot say that the trial court did not correctly construe this clause of his will as expressing an intent to include the plaintiff as a beneficiary thereunder.

There is no error.

In this opinion the other judges concurred.