JOSEPH B. WISEMAN, Appellant, *v.* OGDEN PHIPPS et al., as Executors of OGDEN L. MILLS, Deceased, Respondents.

Argued April 21, 1942; decided June 4, 1942.

*Joseph A. McCabe* for appellant. The grammatical construction of the will indicates an intent to have the phrase " every domestic servant " include employees working outside, as well as inside, the house. (*Matter of Robinson*, 203 N. Y. 380.) The term " domestic servant " includes employees working outside, as well as inside, the house. (*Catto* v. *Plant*, 106 Conn. 236; *Matter of DeForest*, 172 Misc. Rep. 515; *Matter of Johnson*, 156 Misc. Rep. 689; *Matter of Howard*, 63 Fed. Rep. 263.)

*Frederick E. Crane* and *William H. Hayes* for respondents. The plaintiff was not a domestic servant. (*Lafrinz* v. *Whitney*, 233 N. Y. 107; *Ogle* v. *Morgan*, 1 DeG., M. & G. 359; *Matter of Drax*, 57 L. T. [N. S.] 475; *Murphy* v. *Lawrence*, 218 Mass. 39.)

LEHMAN, Ch. J. The plaintiff was employed by the defendant's testator, Ogden L. Mills, as chauffeur from March, 1929, until the testator's death in October, 1937. In the ninth clause of the will the testator provided: " I give and bequeath to J. F. Clark, my gardener, Five thousand dollars ($5,000), and to every domestic servant not herein named who is in my employ at the time of my decease and who at that time has been in my employ continuously for seven (7) years or more, Two thousand, five hundred dollars ($2,500)."

The plaintiff, claiming that the description " every domestic servant * * * in my employ " was intended by the testator to include persons employed as chauffeurs, has brought this action to recover $2,500. The courts below have given to the description a narrower scope, confining it to persons employed as house servants in the testator's home.

The words " domestic servants " are not technical terms of art with rigid definite meaning. They are words in common use. Ordinarily they include at least those persons who serve the comfort and convenience of the employer or the employer's household, and

work in the house, subject to the directions or commands of the head of the household. The context in which the words are used may extend or restrict their intended scope. In some contexts words of similar import have been construed to include only those persons who live and perform their work in the employer's home and are in full sense members of the household. (*Lafrinz* v. *Whitney*, 233 N. Y. 107; *Ogle* v. *Morgan*, 1 De G., M. & G. 359; *Murphy* v. *Lawrence*, 218 Mass. 39.) In other contexts they have been given broader scope. (*Catto* v. *Plant*, 106 Conn. 236; *Matter of Howard*, 63 Fed. Rep. 263.) When such words are used in a will we must endeavor to place ourselves, so far as we can, in the position of the testator and from that viewpoint seek the meaning which was in the mind of the testator when he used these words.

The testator, we are told, was trained in the law, a man of outstanding intelligence who filled with distinction important public positions, including the position of Secretary of the Treasury. He inherited great wealth. He maintained three homes and employed a large staff of house servants, chauffeurs and garage helpers, gardeners and farm laborers. Not only in the clause we have quoted, but also by specific bequest to some employees, the testator in his will made careful provision for those who served him. He employed three chauffeurs. Robert Keating was the testator's personal chauffeur. To him the testator bequeathed an annuity of $1,200. The plaintiff had been the personal chauffeur of the testator's father. The father, who died in 1929, had during his lifetime provided a home for the plaintiff at Staatsburg, where the father maintained a large country place. The plaintiff also received a bequest of $10,000 under the father's will. He was employed after the father's death as the personal chauffeur of the testator's wife. He is not specifically mentioned in the testator's will.

The testator and his family at times occupied the country home at Staatsburg, which testator's father had previously occupied and where the plaintiff had a home. The principal homes of the testator and his wife were in New York city, where they had a house which they usually occupied from November to May each year, and at Woodbury on Long Island, where they occupied a country estate the remainder of the year. In New York city the plaintiff had quarters assigned to him in the private garage which the testator maintained. His employer did not regularly

furnish him with meals there, but the testator's wife would direct the plaintiff to "eat" in the house when that served her convenience. In Woodbury the plaintiff had a room in the servants' quarters of the testator's house and took his meals there in the house with the servants there employed.

The plaintiff's work was not confined to specified days or specified hours. He had no definite days off. He was at all times subject to the directions and instructions of the testator's wife, except that at times "she would say that would be all for the day or all for the night." It was his duty to drive the testator's wife or other members of the family or guests as directed by the testator's wife. His uncontradicted testimony is that "my work was to do anything which I was told, which I did, taking packages, delivering notes, anything I was told I did," but his work, nonetheless, was work "as chauffeur."

We do not attempt any general definition of the class properly described as "domestic servants." No single factor in the plaintiff's employment serves to establish whether the testator intended that he should be included or excluded from the group of domestic servants for whom the testator made provision. We note, however, that the plaintiff worked solely under the directions of the testator or the testator's wife; that he ministered directly to the convenience of the family and guests; that, like other servants, he was not employed for any fixed hours and that during a large part of the year he was a member of the testator's household, living in the testator's home. In our opinion these circumstances indicate clearly that it was the intention of the testator to include the plaintiff among the "domestic servants" who, after long service, were to benefit under the will. We express no opinion that others who did not live in the house, who served only indirectly the comfort and convenience of the family during the hours for which they were employed, who were not subject to the constant direction of the head of the household or a member of the family, would likewise share such benefit.

The judgments should be reversed and judgment directed in favor of the plaintiff in the sum of $2,500, with interest from July 16, 1938, together with costs in all courts to the appellant.

LOUGHRAN, FINCH, RIPPEY, CONWAY and DESMOND, JJ., concur; LEWIS, J., dissents.

Judgment accordingly.