WILLIAM AXER GRAHAM, Plaintiff, Appellant,

*vs.*

COMMERCIAL CREDIT COMPANY, a Delaware corporation, Defendant, Appellee.

*Supreme Court on Appeal, May 21, 1964.*

*Thomas J. Healy, Jr.,* of Metten, Healy & Collins, Wilmington, for plaintiff.

*Robert H. Richards* and *E. Norman Veasey,* of Richards, Layton & Finger, Wilmington, for defendant.

TERRY, C. J., and WOLCOTT and CAREY, J.J., sitting.

WOLCOTT, Justice: This is an appeal from an order of the Vice Chancellor refusing to compel the issuance of stock certificates.

The appellant is a stockholder and director of Commercial Credit. He was the owner of 11,600 shares and as the result of a stock split became entitled to certificates for an additional 11,600 shares. The additional shares had a market value at the time in excess of $500,000.

Commercial Credit's transfer agent following its usual custom sent the appellant certificates for 11,600 shares by registered mail properly addressed to him but not requiring his personal signature for

its receipt. On May 4, 1961 the envelope containing the certificates was delivered at the appellant's residence in Baltimore to a maid, one of two domestic servants, who receipted for the envelope. The envelope was then delivered by the maid receipting for it to the second maid who deposited it in a basket in the appellant's bedroom with other mail which had accumulated in his absence. The appellant at the time was visiting in California. At the time he left for California the appellant had not given any instructions either to Commercial Credit's transfer agent or the postal authorities concerning the authority of his domestic servants to receive and receipt for registered mail. Similarly, he had given no express instructions to his servants concerning the acceptance of mail.

Upon the appellant's return from California he learned that the new stock certificates had been issued. He made search for the envelope containing those sent him but was unable to find them.

The appellent notified Commercial Credit and its transfer agent that he had not received the new stock certificates, whereupon the transfer agent placed an immediate stop order on the transfer of these particular certificates. Since then the missing certificates have not been presented for transfer and none of the parties have any knowledge of their present location.

Appellant demanded that new certificates be issued to him but Commercial Credit refused to do so unless indemnified with a corporate surety bond against any loss resulting from the issuance of duplicate certificates. The cost of such a bond to the appellant would be approximately $20,000. The refusal to issue new certificates except upon indemnification was taken pursuant to a bylaw requiring an indemnity bond unless waived by the Board of Directors.

It appears that Commercial Credit's transfer agent readily issues new certificates for those lost if the value of the lost certificates is less than $100,000 but that an indemnity bond is required where the value is in excess of $100,000.

Based upon the foregoing, this action was brought to compel the issuance to the appellant of new certificates for 11,600 shares pursuant

to 8 *Del.C.* § 158, which provides that every holder of stock shall be entitled to have a certificate representing his stock.

The sole issue before us is whether or not the certificates for 11,600 shares mailed to the appellant and delivered to his home were issued. If they were not issued, then 8 *Del.C.* § 158, requires the issuance to the appellant of certificates representing the stock.

It is clear that the mere preparation of stock certificates by the company does not constitute the issuance of stock. *Smith v. Universal Service Motor Co.,* 17 *Del.Ch.* 58, 147 *A.* 247. In this case the facts were that an employee of the company made out certificates in the name of the plaintiff but there was no proof that the certificates so made out were ever delivered to the plaintiff. It was held that under these circumstances the stock was not issued to the plaintiff since "delivery, either actual or constructive, is essential before a certificate can be said to have been issued." The Chancellor went on to say that no issuance of stock takes place until a certificate duly made out passes from the custody and control of the company into the possession of the stockholder or of some person as agent for him.

The ruling of the Chancellor in the Smith case, which we approve, further narrows the issue before us to the question of whether or not, under the circumstances, the letter containing the certificates issued to the appellant came into his possession.

Appellant argues that he never had possession because his domestic servants had no authority to accept delivery of registered mail addressed to him.

A domestic servant is one whose duties are to serve the needs and wants of the employer's household. As such, the domestic servant in the absence of specific instructions to the contrary is expected to perform duties usually and normally required to serve that purpose. *Jack v. Berlin's Estate,* 149 *Pa.Super.* 531, 27 *A.2d* 455; *Catto v. Plant,* 106 *Conn.* 236, 137 *A.* 764.

In determining the scope of authority of a servant it is not necessary that it be expressly spelled out by the employer. The scope of authority depends upon the nature of the task for which the servant

is hired and, of necessity, includes all the necessary means of performing properly the job for which the servant is hired. *Geylin v. deVilleroi*, 2 *Houst.* 311; In re *Mulco Products, Inc.*, 11 *Terry* 28, 123 *A.2d* 95, aff'd *Mulco Products v. Black*, 11 *Terry* 246, 127 *A.2d* 851.

The facts of this case are that appellant hired two maids to serve the needs and wants of his household. He went off to California, leaving them to all apparent purposes in charge of the household. This can mean only that he expected them to do all things necessary in that respect. While there is little in the record to show what in particular they did, it may safely be assumed that they did the ordinary housework of cleaning, etc., and in all probability accepted deliveries from tradesmen. It is also quite apparent that they were expected to receive the appellant's mail for it had been placed by them in a particular basket to await his return.

■ We think, therefore, that the maid had the implied authority to accept and receipt for registered mail addressed to her employer and delivered in his absence to his home. This being so, it follows that the stock certificates constructively came into the possession of the appellant.

■ This being so, 8 *Del.C.* § 158 has no pertinency in the case at bar since that statute pertains solely to the right to have an original issue of stock. In this case the stock was issued because it was forwarded and delivered to an agent of the appellant. *Smith v. Universal Services Motor Co.*, supra.

■ Appellant argues that it is unfair to compel him to deliver a corporate security bond to indemnify the appellee. He makes an appealing argument in this respect but it is made in the wrong forum. 8 *Del.C.* § 168, provides a means to compel the issuance of new certificates for lost or misplaced stock certificates. The exclusive jurisdiction to entertain such an application is lodged with the Superior Court. This, however, is an action in Chancery to compel the issuance of certificates on the theory that they had never been issued. Appellant's argument as to the fairness of the requirement of a bond has no

bearing upon the question of the first issue of certificates. If it is relevant at all, it would be an action under 8 *Del.C.* § 168, and not in an action under 8 *Del.C.* § 158, which this is.

For the foregoing reasons the judgment below is affirmed.