WILLIAM D. REANEY *v.* STELLA R. WALL ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

Argued May 5—decided June 17, 1948

*Thomas F. Wall,* for the appellant (named defendant).

*Charles R. Ebersol,* for the appellee (plaintiff).

*J. D. Shea* appeared for the defendants Mae R. Barrett et al.

BROWN, J. The plaintiff, in this action against his two sisters, the defendants, asked the court to determine the rights of the parties to certain real estate in Torrington under the terms of their father's will and to quiet and settle the title thereto. By the will, which was duly probated November 7, 1935, the testator provided: "1. I give and devise to my son, William D. Reaney, property on East Pearl Street, with dwellings and buildings thereon, known as 99 and 101 East Pearl Street, in said City of Torrington, with the provision that said property be not sold, transferred, or externally altered or remodeled for a period of three years after my decease; also, in the event of the death of said William D. Reaney without children said property shall revert to my two daughters or their heirs." The son is the plaintiff and the two daughters are the defendants. The Superior Court rendered judgment for the plaintiff and decreed that he has an absolute title to the property in fee simple under the will

and that neither of the defendants has any estate or interest therein. The named defendant has appealed.

There is no dispute as to the facts. Dennis J. Reaney died testate October 24, 1935, leaving no widow and as his heirs-at-law his son, his two daughters, and three grandchildren, children of his son George E. Reaney, who predeceased him. His will, executed July 28, 1934, in addition to the first paragraph quoted above, contains a bequest of his motor vehicles to the plaintiff, a bequest of $200 to a great-grandson, a bequest of $200 to the defendant Mae R. Barrett in trust for her son, Gordon Reaney Barrett, a bequest of $100 to her with the request that it be used for memorial masses from time to time, and a further bequest to her of all his household goods and chattels "to be distributed [by her] as I have ordered, among my heirs." The seventh and final dispositive paragraph provides: "I give and bequeath the balance of my estate, equally divided, between my daughters, Mae Reaney Barrett, Stella Reaney Wall, and the share of my late son, George E. Reaney to Charlotte Reaney." Charlotte is the surviving widow of George. Thomas J. Wall was named executor.

The testator's estate consisted of real and personal property of the appraised value of $21,320, $5000 of which was the value of the real estate devised by paragraph 1 of the will. When the testator executed the will in 1934 he was seventy-four years of age; his wife had died in 1932. At the time of its execution the plaintiff was thirty-eight years old, married and living with his wife, who was twenty-eight, and had no children. The defendant Mae was then forty-two, married, and had one child, and the defendant Stella was fifty, married, and

had children and grandchildren. The plaintiff is still married, living with his wife and childless. At the execution of the will and for many years prior to that, he and his wife had made their home in a part of the real estate in question, and during this period he had generally aided his father in the upkeep and maintenance of the property. Several times before the execution of the will the testator had told the plaintiff that he was to receive this real estate upon the testator's death. Pursuant to paragraph 7, each of the three residuary legatees received $4757.16 in cash on the distribution of the testator's estate.

The plaintiff claimed in the court below to be the owner of an absolute estate in fee simple in the described real estate by virtue of paragraph 1 of the will, while the defendants contended that he has a defeasible estate only. In this connection, as is indicated by the court's memorandum of decision, the issue contested before it was reduced to the question whether, to effect the testator's intent, the words "in the event of the death of said William D. Reaney without children" should be construed to mean the death of the plaintiff prior to the death of the testator or the death of the plaintiff whenever it might occur. Under the former interpretation the plaintiff would be the owner of an absolute estate in fee simple, while under the latter his estate would be a defeasible one, subject to being divested upon his death without children. What the intention of the testator as expressed in the will was, is the question determinative of this appeal.

"The cardinal rule of testamentary construction is the ascertainment and effectuation of the intent of the testator, if that be possible. If this intent, when discovered, has been adequately expressed and

is not contrary to some positive rule of law, it will be carried out." *Swole* v. *Burnham,* 111 Conn. 120, 121, 149 A. 229. "The most inflexible rule of testamentary construction and one universally recognized is that the intention of the testator should govern the construction, and this intention is to be sought in the language used by the testator in the light of the circumstances surrounding and known to him at the time the will was executed." *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 157, 158 A. 224; *Hartford-Connecticut Trust Co.* v. *Thayer,* 105 Conn. 57, 64, 134 A. 155; *Catto* v. *Plant,* 106 Conn. 236, 237, 137 A. 764. "Not only must all parts of the will be considered, but each and all its provisions should, so far as possible, be harmonized and given effect." *Cumming* v. *Pendleton,* 112 Conn. 569, 574, 153 A. 175. In the application of these principles we turn first to the context of the will.

In the absence of any express provision that it is the plaintiff's death prior to that of the testator which is referred to in paragraph 1, the plaintiff's contention that this is the correct construction cannot prevail unless a restriction to this effect becomes operative by implication. The language used by the testator goes far to determine whether that implication does arise. The testator's words "I give and devise to my son, William D. Reancy," as there is no reference to his heirs, or use of other language descriptive of an absolute estate in fee simple, per se strictly connote no more than a life estate in the plaintiff. It is true that it is not necessary, in order to devise an absolute estate, "that words descriptive of such an estate be used, if the intent to give it appears from the will taken as a whole." *Hartford-Aetna National Bank* v. *Weaver,* 106 Conn. 137, 141, 137 A. 388. However, the absence in this devise

to the plaintiff of any words descriptive of an estate in fee simple is to be kept in mind in determining the question before us. The description of the property devised by the words quoted above is followed by this express restriction upon its use: ". . . with the provision that said property be not sold, transferred, or externally altered or remodeled for a period of three years after my decease." Obviously, this provision could not become operative during the testator's lifetime but only after his death, since his death would be a condition precedent to the plaintiff's acquisition of any interest in the property under the will. The restriction concerning the sale or remodeling of the property relates to, and the provision as to the death of the plaintiff without children is sufficiently inclusive to relate to, a time after the death of the testator.

The court's judgment, however, as already suggested, was based on a contrary conclusion, which it stated in these words: "I am convinced that testator had in mind the death of William D. Reaney during testator's lifetime. An absolute estate was created, and thus the entire estate was exhausted, leaving no valid remainder." The basis of decision so stated, that only by the death of the plaintiff before the death of the testator could his estate in fee simple be defeated, directs attention to the significance of the word "revert" as used in the language in question. Its ordinary meaning is to "return" or to "go back," and its technical meaning in law is "to return to the proprietor or his heirs or assigns after the termination of a particular estate or reversion granted by him." Webster's New International Dictionary (2d Ed.). In short, its essential meaning under such circumstances as were present in this case is that something which the

devisee has received from the devisor goes back to the devisor or his designee. As the Iowa court well stated in construing the effect of the word as used in a similar provision in a will: "It could not 'revert back' until it had become vested; it could not become vested during the life of the testator; therefore, the death without heirs could not have been intended to mean death before the decease of the testator." *Jordan* v. *Hinkle,* 111 Iowa 43, 46, 82 N. W. 426; see also *Trexler* v. *Holler,* 107 N. C. 617, 621, 12 S. E. 288, 289. The language of the will shows that the estate devised to the plaintiff was not an absolute fee simple but was a defeasible estate, subject to being divested upon his death without children at whatever time it occurs.

This conclusion is confirmed by a consideration of the existing circumstances. Read in the light of the amount of his estate and his family situation, the will shows a paramount intent of the testator not only to make provision for his three living children but at the same time to distribute the bulk of his property in a manner most likely to benefit all of the four lines of his descendants, whether existing or potential. He thus included the widow of his son who had predeceased him, leaving children, to the extent of approximately one-quarter of his estate, gave outright to each of his daughters, the defendants, a like sum, and to the plaintiff an estate in the realty, which comprised practically the remaining fourth of his estate, limited, however, to a life use unless he should die leaving children. Whether or not this provision, definitive of the plaintiff's share, was, as the named defendant suggests, designed as an incentive to the generation of a fourth line of descendants by the plaintiff, it provided for that possibility and meantime entitled him to the use of

the property. In keeping with the testator's testamentary scheme, upon the plaintiff's death without children the realty is to go to his only other living children, his two daughters, the defendants, or their heirs, instead of to the plaintiff's widow or to other strangers to the blood to whom the plaintiff might elect to give it had he received an absolute estate in fee simple. Furthermore, the disparity between the age of the testator, seventy-four, and that of the plaintiff, thirty-eight, may be considered indicative that he was contemplating the birth of a child to the plaintiff rather than a lapsed devise. See *In re Cramer*, 170 N. Y. 271, 63 N. E. 279. That the plaintiff had made his home on the testator's premises and had assisted in their upkeep affords no convincing support for the interpretation which he claims. The testator's statements that upon his death the plaintiff was to receive the real estate are dispositive words. As such they cannot be considered in interpreting the meaning of the language used in his will. *Speyers* v. *Manchester*, 131 Conn. 598, 604, 41 A. 2d 783; see *Chapman* v. *Allen*, 56 Conn. 152, 167, 14 A. 780. It follows from what we have said that the language of the will, interpreted in the light of the surrounding circumstances, created a defeasible estate in the plaintiff, subject to being divested upon his death without children, and not an estate in fee simple absolute. There is no ambiguity in the language used by the testator.

The greater part of the plaintiff's argument in his brief is devoted to the proposition that there is an ambiguity and that therefore two recognized rules of construction are operative to require a decision that inasmuch as he did not predecease the testator he has an estate in fee simple absolute. The gist of the first of these is that, where the devise of an absolute es-

tate in fee is followed by an apparently inconsistent limitation, the conflict will be reconciled "by reading the latter disposition as applying exclusively to the event of the prior devisee in fee dying in the lifetime of the testator." *Burnham* v. *Burnham,* 101 Conn. 529, 532, 126 A. 704; *Lawlor* v. *Holohan,* 70 Conn. 87, 90, 38 A. 903. As is pointed out in the former opinion, however, a condition precedent to the application of this principle is that "there are no extraneous circumstances nor other provisions of the will to aid in ascertaining the intention." It is apparent from what we have said that the plaintiff has failed to meet this condition in the instant case. The second rule is that "An express gift in fee will not be reduced to a life estate by mere implication from a subsequent gift over, but may be by subsequent language clearly indicating intent and equivalent to a positive provision." *Mansfield* v. *Shelton,* 67 Conn. 390, 394, 35 A. 271; *Scanlin* v. *Peterson,* 105 Conn. 308, 313, 135 A. 394; *Merchants Bank & Trust Co.* v. *New Canaan Historical Society,* 133 Conn. 706, 715, 54 A. 2d 696. What we have said as to the express devise to the plaintiff here perhaps sufficiently indicates that this principle is not applicable in this case. Be this as it may, neither of these rules applies where no ambiguity is involved. *Butler* v. *Flint,* 91 Conn. 630, 636, 101 A. 19. As we have determined that there was no ambiguity here, they cannot avail to support the plaintiff's contention.

The named defendant's contention that the plaintiff failed sufficiently to set forth in his complaint the nature of his claim, title or interest, as required by § 5035 of the General Statutes, calls for no consideration. The defect was obvious. The record indicates that the defendants had it in mind, but, instead of directing attention to it before the evidence was

closed, first called it to the court's attention by including it in their claims of law. We have said that "if for any cause [a party] postpones till the evidence is all in, a statement of the real nature of his objection, he must not be allowed to gain any advantage on that account." *Santo* v. *Maynard,* 57 Conn. 157, 161, 17 A. 700. The sound sense and justice of this rule is manifest. The curing of a serious defect would require an amendment, very likely a delay, and it might well be a continuance. The defendants' abstention from raising this claim concerning the complaint affords sufficient reason for our declining to entertain it.

There is error, the judgment is set aside, and the case is remanded to the Superior Court with direction to enter judgment in accord with this opinion.

In this opinion the other judges concurred.