THE CHASE NATIONAL BANK, EXECUTOR (ESTATE OF NICHOLAS S. HILL, JR.) *v.* WILLIAM A. GUTHRIE ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued June 10—decided July 22, 1952

*Earle W. Smith,* for the named defendant et al.

*John V. Donnelly,* pro se as guardian ad litem of Ariane L. Yokana et al.

*Arthur C. Williams* appeared for the plaintiff.

BALDWIN, J. The plaintiff, as executor and trustee, brought this action seeking a construction of the will of its testator, Nicholas S. Hill, Jr. There are two groups of defendants. One is composed of the grandchildren of the testator. The other includes his great-grandchildren and the unborn issue of his children, all of whom are represented by a guardian

ad litem. The case has been reserved for the advice of this court upon certain questions.[1]

Nicholas S. Hill, Jr., died on October 18, 1936, leaving a will dated October 7, 1932, which was admitted to probate. His widow, Florence Acheson Hill, then forty-seven years of age, survived. She died on September 9, 1942. His only children, Isabelle Hill Guthrie, a widow forty years old at the time of her father's death, and Nicholas S. Hill, 3d, then thirty-eight years of age, married and living with his wife, also survived. There were four grandchildren living at the time of the testator's death. Three of these were the children of Mrs. Guthrie, the youngest of whom was a son born September 8, 1925. The other grandchild was the son of Nicholas S. Hill, 3d, born April 22, 1923. No additional grandchild has been born since the execution of the will. There are five great-grandchildren.

The testator made certain specific bequests. He gave $30,000 to his daughter and $5000 to his son, outright. In the fourth article of his will he gave $50,000 to trustees with the provision that the income

---

[1] "[1.] Has the class of grandchildren of the testator entitled to the principal of said trust fund closed, and if so, what is the date as of which said class closed?

"[2.] If the class of grandchildren of the testator entitled to the principal of said trust fund has not closed, what will be the determinative date or event as of which said class will close and the principal of said trust will be distributable?

"[3.] Has the question as to the date as of which the class of the testator's grandchildren entitled to the principal of said trust fund closed been so determined by the decision of the [Superior] Court in Case Number 57812, 'Nicholas S. Hill, III vs. The Chase National Bank, Executor and Trustee under the will of Nicholas S. Hill, Jr.' as to be res adjudicata as to the claims now asserted by the defendant, John V. Donnelly, as Guardian ad Litem for Ariane Lansdale Yokana, William Guthrie Sayen, David Churchill Sayen, Pamela Charlotte Hill, Nicholas S. Hill, V and the unborn issue of Isabelle Hill Guthrie and Nicholas S. Hill, III?"

be paid to his widow for life and that at her death the principal be paid into a trust fund established for his grandchildren in the thirteenth article of the will. In the tenth article he gave $20,000 to trustees, the income therefrom to be paid to his sister for life, and upon her death the principal to be paid in equal shares to his grandchildren "who may be living at that time, per capita and not per stirpes." In the twelfth article he gave the residue of his estate to the plaintiff and to his widow, as trustees, and directed that the income be paid to his widow for life. The thirteenth article provided that upon her death the plaintiff, as the surviving trustee, should "pay the principal of the above trust fund into a trust, in equal shares, per capita and not per stirpes, for the benefit of my grandchildren"; that the plaintiff and the testator's daughter, Mrs. Guthrie, should be trustees of this fund; and that the income should be paid to Mrs. Guthrie, "to be used in equal shares for the benefit of my grandchildren as may in her judgment be deemed proper." He further directed "the surviving executors and trustees, or executor and trustee, of this trust to pay the principal of this trust fund to each of my grandchildren, in equal proportion, when the youngest of my grandchildren then living shall have reached the age of twenty-five years."

We have already held that the gift to the testator's grandchildren was a class gift. *Hills* v. *Birmingham,* 131 Conn. 174, 177, 38 A.2d 604; see also *Hill* v. *Wright,* 128 Conn. 12, 19, 20 A.2d 388. Such a class would remain open to admit any grandchild born after the execution of the will and before the event occurred or the time arrived for the closing of the class. *Webster* v. *Welton,* 53 Conn. 183, 184, 1 A. 633; *Jones' Appeal,* 48 Conn. 60, 67.

The first question posed by the reservation is whether the class is closed, and if so, on what date it closed. The grandchildren claim that the class closed when the testator's widow died on September 9, 1942. If that be so, the distribution should be made as of September 8, 1950, the date when the youngest of the four grandchildren, the son of Mrs. Guthrie, reached twenty-five years of age. The guardian ad litem claims on behalf of the great-grandchildren and the unborn issue of the testator's children that the class would include any grandchild whenever born. He further alleges that it would not close until the testator's daughter and son were both dead and the youngest living grandchild reached his twenty-fifth birthday, with a possible further extension of nine months if the widow of Nicholas S. Hill, 3d, was enceinte.

The resolution of these claims is to be found by applying certain recognized principles of testamentary interpretation. The cardinal rule to be followed in construing a will is to find and effectuate the intent of the testator. *Swole* v. *Burnham,* 111 Conn. 120, 121, 149 A. 229; *White* v. *Smith,* 87 Conn. 663, 668, 89 A. 272; *Reaney* v. *Wall,* 134 Conn. 663, 666, 60 A.2d 505; *Budington* v. *Houck,* 134 Conn. 72, 76, 54 A.2d 671. In seeking that intent, the court looks first to the will itself. *Hoenig* v. *Lubetkin,* 137 Conn. 516, 519, 79 A.2d 278. It examines the words and the language used in the light of the circumstances under which they were written. *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 157, 158 A. 224. It studies the will as an entirety. *Mitchell* v. *Reeves,* 123 Conn. 549, 556, 196 A. 785. The quest is to determine the meaning of what the testator said and not to speculate upon what he meant to say. *Swole* v. *Burnham,* supra, 122.

The testator's direction in the thirteenth article of his will that, upon the death of his wife, the executor and trustee should pay the principal of the trust fund into a trust, in equal shares, per capita and not per stirpes, for the benefit of his grandchildren, expressed an intent to allocate a portion of the principal to each of his grandchildren individually at the time of the widow's death. The portion so allocated to each could be determined only if the total number of grandchildren who were to participate was definitely known. That number could not be fixed unless the class closed as of that time. Furthermore, this same article directed that the principal of the trust fund be paid to each of the testator's grandchildren, "in equal proportion, when the youngest of my grandchildren *then living* shall have reached the age of twenty-five years" (italics supplied). Do the words "then living" refer to the event of the death of the widow and the establishment of the trust as terminating the period wherein there could be additions to the class of beneficiaries, or do they refer to the time when the youngest living grandchild who might be born to the children of the testator reaches the age of twenty-five years?

The word "then" as used in a testament may be employed to express a point in time or to designate an event. It is more frequently used in the latter sense. *State Street Trust Co.* v. *Sampson,* 228 Mass. 411, 413, 117 N.E. 832; *People* v. *Camp,* 286 Ill. 511, 518, 122 N.E. 43; see *First National Bank* v. *Somers,* 106 Conn. 267, 275, 137 A. 737; *Fitzpatrick's Estate,* 233 Pa. 33, 35, 81 A. 815. The testator's widow was forty-three years of age when the will was drawn and forty-seven when the testator died. She was only seven years older than the testator's daughter, Mrs. Guthrie, and nine years older than

his son Nicholas, 3d. The youngest child of Mrs. Guthrie was seven years old, and the only child of Nicholas, 3d, was nine, when the will was executed. It is fair to assume that the testator intended to fix some definite and reasonable limitation on the closing of this class. It would have been logical for him to choose the death of his widow and the termination of the trust in her favor as the time when the trust for his grandchildren should become fully operative. It is reasonable to believe under the circumstances that the testator contemplated that his widow would live for a number of years and, in all probability, beyond the time when it could be expected that his daughter or his son would have any more children. Therefore, his failure to provide for the contingency of the early death of his widow does not militate against the conclusion that the class closed upon her death. Furthermore, he nominated his daughter, Mrs. Guthrie, as cotrustee with the plaintiff to administer the trust created for the benefit of his grandchildren and he gave her discretion in administering the trust. However, he gave no discretion to the survivor of these trustees, which is indicative that the testator did not expect that the closing of the class would be deferred for a long period of time but expected that his daughter would in all probability still be alive to administer the trust when the youngest living grandchild in the class reached the age of twenty-five.

Then, too, in the tenth article the testator created a trust for his sister with provision that upon her death the principal should be paid in equal shares to his grandchildren "who may be living at that time." In that article he chose the event of the death of his sister and the termination of the trust for her benefit as the time for closing the class of grand-

children who would benefit as well as for the distribution of the principal of the trust fund. He made no provision in that article for any grandchild who might be born thereafter. By the fifth article, the testator bequeathed $30,000 to his daughter, and by the sixth, $5000 to his son, with the qualifying words, "as evidence that I bear him no ill will." His son had been divorced and had remarried. See *Hill* v. *Birmingham,* 131 Conn. 174, 177, 38 A.2d 604, which involves an earlier construction of the same will. The son's child was born of his first marriage. In the light of these specific bequests, it is difficult to believe that the testator intended to prefer possible future grandchildren yet unborn, offspring of the son and his second wife in numbers unknown, to the three living grandchildren of his widowed daughter. While his widow may have died earlier than the testator contemplated, nevertheless, so far as the birth of additional grandchildren is concerned events have taken place much as he anticipated.

We conclude that the intent of the testator expressed in his will was that the class of beneficiaries comprised of the grandchildren should close upon the death of his widow. Consequently, distribution should be made as of September 8, 1950, when Mrs. Guthrie's son, the youngest living grandchild, reached the age of twenty-five years. Casner, "Class Gifts to Others than to 'Heirs' or 'Next of Kin'— Increase in the Class Membership," 51 Harv. L. Rev. 254, 260.

This conclusion effectuates the intent of the testator. To adopt the construction claimed by the guardian ad litem would lead to unreasonable results. Such a construction conceivably could mean postponing the closing of the class of beneficiaries until the testator's son lived to reach a very advanced

age, for the law may presume a man capable of parenthood so long as he is alive. *Pierce* v. *Root,* 86 Conn. 90, 96, 84 A. 295. It would operate to delay the outright possession of the gift by the beneficiaries for a longer period of time than the testator could have intended, to prolong the period of administration and to lessen the value of the gift by reason of the additional expense involved. Our law has always been solicitous that there be a complete settlement of a decedent's estate as soon as that is possible. *Webster* v. *Merriam*, 9 Conn. 225, 228; 2 Locke & Kohn, Conn. Probate Practice, § 262, p. 39. The construction claimed by the guardian ad litem requires clearer language to that effect than that contained in the will before the court. *Beardsley* v. *Bridgeport Protestant Orphan Asylum,* 76 Conn. 560, 564, 57 A. 165.

We answer the first question, "Yes, on September 9, 1942." The answer to the first question makes it unnecessary to answer the second and third.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.