The Hartford-Connecticut Trust Company, Trustee (Estate of Albert A. Long) *v.* Eleanor M. Gowdy et al.

Inglis, C. J., O'Sullivan, Wynne, Daly and Shannon, Js.

Argued June 9—decided August 3, 1954

*I. Oscar Levine,* with whom, on the brief, were *Melvin S. Katz* and *Ethel S. Sorokin,* for the appellants (defendant Miner et al.).

*W. David Keith,* for the appellants (defendant Braman et al.).

*Donald H. McGilvray,* for the appellants (named defendant et al.).

*Bernard E. Dubin,* with whom, on the brief, was *John J. Burke,* for the appellee (defendant Lyman, executor).

*Henry S. Robinson, Jr.,* appeared for the plaintiff.

INGLIS, C. J. This is an action to construe the will of Albert A. Long. Its provisions may be summarized as follows: By the first paragraph the life use of all of the estate was given to the testator's widow, with power to invade the principal to the extent necessary for her comfortable support and that of any unmarried daughters who might live with her. The second, third and fourth paragraphs gave to the testator's three daughters, Carrie A.

Gowdy, Huldah C. Jenks and Nellie L. Machie, certain relatively small specific bequests and pecuniary bequests and the life use of various pieces of real estate with remainders over to their respective children.

The paragraphs which have given rise to the questions now to be decided are the fifth and seventh. They read as follows: "Fifth: I give and bequeath the use and income of all the rest and residue of my estate to my daughters Sarah J. Long and Mattie A. Long to be held by them during their lives with remainder over to be equally divided between their children in case they have any, per stirpes to them and their heirs forever. . . . Seventh: In case there shall be any of my property that is not disposed of by this will I give, devise and bequeath the same to my children to be equally divided between them, to them and their heirs forever." The sixth paragraph named an executor.

The testator died March 8, 1913. When the will was executed in 1899 he had five children. Of these, Carrie, Huldah and Nellie were married; Sarah and Mattie were unmarried. Huldah predeceased the testator, leaving no children, but the other four survived. On October 19, 1914, the plaintiff was appointed trustee of the rest and remainder of the estate and is still acting as such. The daughter Carrie died intestate on November 19, 1951, leaving as her sole heirs at law a daughter, Eleanor M. Gowdy, and a grandson, Arthur G. Bigelow, both of whom are parties to this action. Carrie's administrator was not made a party. Nellie Machie is still alive and is a party. Sarah, now Sarah J. Miner, was living at the time the action was instituted and is also a party. She has three children, Irma M. Britney, Arlene M. Braman and Inez M. Taylor, all of whom

are parties. Mattie, who married Russell Lyman, died testate but without descendants on March 1, 1952. Her husband is the executor of her will and is a party to this action in that capacity.

The death of Mattie without children has given rise to two questions: (1) What is to be done with that income of the fund held in trust under the fifth paragraph of the will which accrues between Mattie's death and the death of Sarah? (2) What is to become of the share of the principal of that fund which would have gone to the children of Mattie if she had left any? The trial court rendered judgment construing the will to the effect that as of the death of Mattie the principal of the trust fund should be divided in halves; one-half of the fund should continue in the trust until the death of Sarah, when the principal of it should be distributed to her issue per stirpes; the other half, together with half of the income accumulated on the whole fund since Mattie's death, should be paid to Mattie's executor to be distributed by him to her heirs at law. From this judgment Nellie, Sarah and her children, and the heirs of Carrie have appealed.

The general principles controlling the construction of wills have been stated so frequently in recent opinions of the court that it is hardly necessary to recite them here. That which is to be sought is the intention of the testator as expressed in the will. This is to be determined from an examination of the will as a whole, including the ascertainment of the testamentary plan, in the light of the circumstances under which the will was executed. *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 345, 99 A.2d 224; *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643; *Hoenig* v. *Lubetkin,* 137 Conn. 516, 519, 79 A.2d 278.

The fifth paragraph of the will in question makes two distinct bequests. The first of these is the bequest of the use and income of the trust fund. The second is the bequest of the principal of the fund. Since different terms were used to control the disposition of these bequests, we will discuss each separately.

The bequest of the use and income to Sarah and Mattie created a tenancy in common. Ordinarily in such a case it is presumed that the testator intended that each of the tenants in common should take an equal share and that the share of one should not pass to the other by way of survivorship. *Allen* v. *Almy,* 87 Conn. 517, 525, 89 A. 205. This, of course, is particularly true where there is a direction that the amount of the bequest be divided equally among the cotenants or that the beneficiaries shall take share and share alike, or an equivalent expression. *Union & New Haven Trust Co.* v. *Sellek,* 128 Conn. 566, 568, 24 A.2d 485; *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 317, 130 A. 483; *Houghton* v. *Brantingham,* 86 Conn. 630, 639, 86 A. 664. Whether the survivor of two beneficiaries to whom a common bequest has been made will take the whole fund bequeathed depends, however, on the intent of the testator, and if from the will as a whole it appears that it is his intent that the survivor shall take, then he does so, not by right of survivorship as in a joint tenancy, but rather by reason of a limitation over of a remainder interest. *Blodgett* v. *Union & New Haven Trust Co.,* 111 Conn. 165, 167, 149 A. 790; *Bolles* v. *Smith,* 39 Conn. 217, 219. Under such circumstances the tenants in common take interests sometimes called cross remainders. *Hartford-Connecticut Trust Co.* v. *Hartford Hospital,* 141 Conn. 163, 171, 104 A.2d 356.

If we apply the foregoing principles to so much of the fifth paragraph of the will before us as disposes of the life use and income of the fund, it is to be noted that there is no direction that the income shall be divided between the two life tenants. So far as the words disposing of the use and income are concerned, it apparently was the intent of the testator that the use and income should be treated as a whole. It is also apparent from the will taken as a whole and read in the light of the circumstances under which it was drafted that the testator looked upon his two daughters, Mattie and Sarah, as a unit distinct and different from the other natural objects of his bounty. See *Shannon* v. *Eno*, 120 Conn. 77, 95, 179 A. 479. They were his only unmarried daughters when he executed the will. In several places the will evidences his determination, possibly in anticipation of a lack of support from a husband, that neither should be without the comforts of life. It is significant that in the first paragraph of his will the testator authorized his widow to invade the principal not only for her own support but also for the support of any of his unmarried daughters who might live with her. Apparently he envisaged these two daughters, if they remained unmarried, living together in the same household with their mother. In any event, it is clear that the testator looked upon these two daughters as a unit possessing characteristics which set them apart during their lives from his other beneficiaries. He desired that the total income of the fund be devoted to the benefit of both, not individually, but as a unit. We therefore conclude that his intent was that, upon the death of either, the fund should be kept intact and the entire income paid to the survivor for the balance of her life.

When we come to the question of the disposition, after the death of Sarah, of the principal of that portion of the fund which would have gone to the children of Mattie if she had had any, we find the situation quite different. With reference to the disposition of this remainder interest, the fifth paragraph of the will directs that it "be equally divided between their [Mattie's and Sarah's] children in case they have any, per stirpes to them and their heirs forever." The direction that the fund be divided equally per stirpes clearly evinces an intention to make separate bequests of the remainder interest, one bequest being to the children of one daughter and the other to the children of the other daughter. Not only is there to be a division but the division is to be made per stirpes. That is, each of the testator's daughters is to be the start of a separate branch. The will is clear on this subject and for that reason this case is distinguishable from *Hartford-Connecticut Trust Co.* v. *Beach,* 100 Conn. 351, 359, 123 A. 921, cited by some of the defendants. Consequently, all that is to be taken by the branch of which Sarah is the head is one-half of the principal of the remainder. Sarah's children can have no right to any of the other half, which was designed to go to Mattie's children.

Nor can that half go to the heirs of Mattie either directly or through her estate. She took only a life use of the fund in common with Sarah. The will gave her personally no interest in the principal. Accordingly, her estate is not entitled to any of the principal. The bequest of half of the remainder interest is not to her heirs but to her children if she leaves any. The words "to them and their heirs forever" appearing at the end of the paragraph are words of limitation, not of purchase. This forces

us to the conclusion that the half interest in the remainder which was bequeathed, after the expiration of the lives of both Mattie and Sarah, to Mattie's children is not disposed of by the fifth paragraph of the will.

That this is in accord with the intent of the testator is confirmed by the fact that in the seventh paragraph of the will he made provision for the disposition of "any of my property that is not disposed of by this will." In inserting this provision the testator could not have had in mind any possible failure of bequests made prior to the fifth paragraph, since that paragraph itself purported to dispose of all the rest and residue of his estate. If any prior bequest had failed, it would have dropped into the bequest made by the fifth paragraph. The only possible purpose to be served by the provisions of the seventh paragraph was to take care of a possible failure of some of the bequests made in the fifth. In other words, it is clear that the testator anticipated that there might be some of the residue of his estate which would not be disposed of by the fifth paragraph and this could happen only in the event that either Sarah or Mattie, or both of them, died without issue. The likely eventuality was that one, but not both, of these daughters would die childless. This, then, was the contingency most apt to have occasioned the insertion of the seventh paragraph.

Since the share of the remainder interest which was originally designed for Mattie's children was not disposed of by the fifth paragraph of the will, it must fall within the provisions of the seventh. See *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 331, 130 A. 483. That is, it is bequeathed to the children of the testator. This is a bequest to a class. The class consisted of all the children of the

testator who were alive at his death. *Allen* v. *Almy,* 87 Conn. 517, 523, 89 A. 205; *Close* v. *Benham,* 97 Conn. 102, 103, 115 A. 626; *Wallace* v. *Wallace,* 103 Conn. 122, 134, 130 A. 116. It therefore consisted of the testator's four daughters, Carrie, Nellie, Mattie and Sarah. It did not include Huldah, because she predeceased the testator.

Whether the gift contained in paragraph seven was of a contingent remainder or whether it was of an executory devise makes no difference. Whatever it was, it vested in the class as of the testator's death, even though the enjoyment of it was postponed. *Bartram* v. *Powell,* 88 Conn. 86, 89, 89 A. 885; *Ingersoll* v. *Ingersoll,* 77 Conn. 408, 410, 59 A. 413. It follows that the interest of Carrie as a member of the class was not extinguished by her death. *Norton* v. *Mortensen,* 88 Conn. 28, 34, 89 A. 882.

The contention is made by some of the parties that Mattie cannot now be considered as a member of the class because the will gave her life use of the fund now in question. This contention is based on the rule enunciated in *Close* v. *Benham,* supra, 109. The rule there stated is this: "Wherever a life use is given, with remainder over to [the life tenant's] issue, and, failing such, to the testator's children, heirs or next of kin, or other class, we think it must be presumed that the testator intended to exclude the life tenant from this class, unless a contrary intent is manifest in the language of the will." The reason for this rule is that, when a testator has given a beneficiary a limited interest, such as a life estate, in a fund, prima facie it would appear that he did not intend to give that same beneficiary an added interest in the same fund. The only effect of the presumption is that it operates as an aid in the determination of the testamentary intent. If

the bequest over to the testator's children had been made in the same paragraph of the will as the bequest of the life estate to Mattie, this rule would be applicable to create a strong presumption against her taking any interest as one of the testator's children. That, however, was not the case. The fifth paragraph of the will, which gave Mattie the life use, does not expressly provide that if she died without children the portion of the estate of which she had the life use should go to the children of the testator. The property involved will go to the children of the testator only by virtue of the catchall residuary clause at the end of the will. The situation, therefore, is closely akin to one in which the remainder interest after a life estate has become intestate or where the bequest over consists of a direction that the remainder be distributed in accordance with the Statute of Distributions. In those situations we have held that the presumption referred to in *Close* v. *Benham,* supra, does not control. *City Bank Farmers Trust Co.* v. *Whitten,* 137 Conn. 192, 195, 75 A.2d 383; *Bridgeport City Trust Co.* v. *Shaw,* 115 Conn. 269, 274, 161 A. 341; *Thomas* v. *Castle,* 76 Conn. 447, 452, 56 A. 854. In the present case, even though there were a presumption that the testator did not intend that Mattie should be included in the class taking this portion of his residuary estate, the presumption would be so weak that it would be overcome by the fact that it is quite apparent from the will as a whole that the testator wished Mattie or her estate to receive at least equal treatment with that accorded to his other daughters. Mattie was, and her estate is, one of the members of the class.

We therefore conclude that upon the death of Sarah the one-half share of the trust fund which

would have gone to the children of Mattie, if there had been any, should be distributed to the estate of Carrie A. Gowdy, to Nellie L. Machie or her estate, to the estate of Mattie Lyman and to the estate of Sarah J. Miner, in equal shares.

We point out that the administrator of the estate of Carrie A. Gowdy has not been made a party to this action. Since the heirs of Carrie A. Gowdy are parties, and since the conclusions we have reached are to the advantage of her estate, we have been willing to announce our construction of the will although her estate, as such, was not represented. See *Auchincloss* v. *City Bank Farmers Trust Co.*, 136 Conn. 266, 273, 70 A.2d 105; *Wilson* v. *D'Atro*, 109 Conn. 563, 569, 145 A. 161. Inasmuch, however, as the interest of Carrie A. Gowdy in the fund here in question was vested in her prior to her death, her share of the fund will have to be distributed to her estate. 2 Locke & Kohn, Conn. Probate Practice, pp. 44, 740. Consequently, her administrator is a necessary party to this action.

There is error, the judgment is set aside and the case is remanded with direction to cite in as a party the administrator of the estate of Carrie A. Gowdy and then to enter judgment construing the will in accordance with this opinion.

In this opinion the other judges concurred.