HARTFORD NATIONAL BANK and TRUST COMPANY *v.* JULIA S. THRALL ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, ARMENTANO and DALY, Js.

498

Argued March 3—decision released June 30, 1981

*Martin Wolman*, with whom, on the brief, was *Ernest A. Inglis, Jr.*, for the plaintiff.

*Ralph G. Elliot*, with whom was *Anne E. Lupica*, for the named defendant.

*J. Noxon Howard*, with whom were *Norman Rogers, Jr.*, and, on the brief, *Cornelius E. Clark, Jr.*, for the defendant Richard C. Hastings, Jr.

*Jack Rubin*, with whom was *Charles Stroh*, for the defendants Florence H. Markowski and Edward Broder, Jr.

*John C. Graham*, for the defendant Charles Spencer Hastings.

ARMENTANO, J. The plaintiff, formerly known as the Travelers Bank and Trust Company, brought this action seeking a declaratory judgment involving the interpretation of the language in a will terminating a testamentary trust administered by the plaintiff. The defendants are the potential remainderpersons of the assets of the estate. The parties have stipulated to the facts: Charles L. Spencer executed a will on July 24, 1916, and a

codicil on May 13, 1920. Paragraph nine of the will contains the disputed language and is set out in its entirety in the footnote.[1] The codicil language is not relevant to the issues in this case. Paragraph nine is actually made up of three parts. The first part provides for a life interest in the income produced by a trust funded by the bulk of Spencer's estate. The second part terminates the trust on the death of the last income beneficiary and provides for a distribution of the rest, residue and remainder of Spencer's estate to the children of the income beneficiaries. The last part provides for a contin-

[1] Paragraph Nine of Spencer's will provided: "All the rest, residue and remainder of my estate, both real and personal, including all lapsed legacies and devises, I do give, devise and bequeath to The Travelers Bank and Trust Company, of Hartford, Connecticut to my son Charles Luther Spencer, Jr., and to my son-in-law Edward Stuart Goldthwaite, in trust, the income therefrom to be paid quarterly to my children Charles Luther Spencer, Jr., and Lillian Clara Spencer, and to my grandchild Spencer Goldthwaite, as a class, share and share alike, for and during the term of their natural lives. Upon the death of either of my said children or my said grandchild (prior to the termination of said trust by the death of all of them as hereinafter provided) leaving a child or children surviving them, I direct that said child or children have and receive, until said trust shall terminate, the share of the income from said rest and residue of my said estate to which the parent would be entitled if living. I further direct that no part of said income shall be assigned or transferred by those to whom it may become payable, nor shall the same be subject to attachment or execution in any action for the recovery of a debt or obligation of any kind contracted by them or either of them before or after my decease. Upon the death of my said children and of my said grandchild said trust shall terminate, and I do then give, devise and bequeath said the rest, residue and remainder of my estate to their children, if any they have, as a class, to be divided among them per stirpes, share and share alike, to them and to their heirs forever. In the event of the death of my said children and of my said grandchild, leaving no children, then I direct that said the rest, residue and remainder of my estate be divided among my heirs-at-law as determined at the termination of said trust, in accordance with the statute of distribution then in force regarding the distribution of intestate estates."

gent distribution in the event no children were born of the income beneficiaries.

Spencer died on September 21, 1921, and his will and codicil were subsequently approved and admitted to probate in the Probate Court for the district of Suffield. He was survived by a daughter, Lillian C. S. Broder; a son, Charles Luther Spencer, Jr.; a grandson, Spencer Goldthwaite, the son of a predeceased daughter, Julia Goldthwaite; and two other infant grandchildren, one the son of Broder and the other the daughter of Spencer, Jr. On October 5, 1921, Spencer, Jr., Edward Stuart Goldthwaite and the plaintiff duly qualified and were appointed co-trustees of the testamentary trust created by paragraph nine. Presently, the only remaining trustee is the plaintiff, which has served as a corporate trustee continuously since its appointment in 1921.

In accordance with the terms of the trust, the trustees initially distributed the income earned from the principal to the income beneficiaries Broder, Goldthwaite, and Spencer, Jr. After Goldthwaite's death in 1931, leaving no issue, the trustees divided his share between Broder and Spencer, Jr. Upon the death of Spencer, Jr., in 1960, his share of the income was paid to his only child, the defendant Julia S. Thrall. There is no dispute over the distribution of the income generated by the corpus of the trust. On August 22, 1979, the death of Broder, Spencer's last living child, terminated the trust. Broder was survived by her four children, namely: the defendants Charles S. Hastings; Richard C. Hastings, Jr.; Florence H. Markowski; and Edward Broder, Jr. (Broder's four children). By the terms of the will, the plaintiff is obligated to distribute the estate assets. The instructions for distribution,

as set forth in paragraph nine, provide as follows: "Upon the death of my said children [Broder and Spencer, Jr.] and of my said grandchild [Goldthwaite] said trust shall terminate, and I do then give, devise and bequeath said the rest, residue and remainder of my estate *to their children, if any they have, as a class, to be divided among them per stirpes, share and share alike, to them and to their heirs forever."* (Emphasis added.)

There is no dispute that the entire corpus of the estate is to be shared by Thrall and Broder's four children. The question is what share each is to receive. Broder's four children claim that it should be distributed in five equal shares to each of them and Thrall. Thrall argues that the assets should be divided into two equal parts; one part for her and the other part to be equally shared by Broder's four children. The plaintiff's position is neutral.

The trial court, at the request of and with the consent of all the parties, reserved two questions for the consideration and advice of this court. Practice Book §§ 3133 and 3134. We have paraphrased them as follows: (1) Should the assets of the estate be distributed to the remainderpersons with one-half of the assets going to Thrall and the other half of the assets being divided equally among Broder's four children? and (2) Should the assets of the estate be distributed to the remainderpersons with one-fifth of the assets going to Thrall and each of Broder's four children?

The doubt as to the distribution arises from the testator's use in the same dispositive sentence of the three phrases "to their children, if any they have, as a class"; "to be divided among them per stirpes"; and "share and share alike." There is no

question as to the meaning of the phrase "to them and to their heirs forever." It is made up of words of limitation, not of purchase. *Hartford-Connecticut Trust Co.* v. *Gowdy,* 141 Conn. 546, 553, 107 A.2d 409 (1954).

" 'The cardinal rule of testamentary construction is the ascertainment and effectuation of the intent of the testator, if that be possible. If this intent, when discovered, has been adequately expressed and is not contrary to some positive rule of law, it will be carried out.' *Swole* v. *Burnham,* 111 Conn. 120, 121, 149 A. 229 [1930]. 'The most inflexible rule of testamentary construction and one universally recognized is that the intention of the testator should govern the construction, and this intention is to be sought in the language used by the testator in the light of the circumstances surrounding and known to him at the time the will was executed.' *Union & New Haven Trust Co.* v. *Ackerman,* 114 Conn. 152, 157–58, 158 A. 224 [1932]; *Hartford-Connecticut Trust Co.* v. *Thayer,* 105 Conn. 57, 64, 134 A. 155 [1926]; *Catto* v. *Plant,* 106 Conn. 236, 237, 137 A. 764 [1927]." *Reaney* v. *Wall,* 134 Conn. 663, 666–67, 60 A.2d 505 (1948). In seeking the testator's testamentary intent, "the court looks first to the will itself . . . . It studies the will as an entirety. The quest is to determine the meaning of what the [testator] said and not to speculate upon what [he] meant to say . . . ." *Kimberly* v. *New Haven Bank N.B.A.,* 144 Conn. 107, 113, 127 A.2d 817 (1956); *Connecticut Bank & Trust Co.* v. *Lyman,* 148 Conn. 273, 278–79, 170 A.2d 130 (1961).

With these rules in mind, we have examined the meaning of each of the three phrases which create the doubt as to the proper distribution of the estate assets.

The first phrase is "to their children, if any they have, as a class." There is no dispute that the pronoun "their" refers to the income beneficiaries. Also, at the time the testator executed his will, the proposed income beneficiaries had no children. This explains his use of the words "if any they have." Since children were subsequently born and living at the testator's death, these words lose their meaning. As a result, we construe the phrase as follows: "to the income beneficiaries' children as a class."

There is no doubt that this phrase indicates a gift to a class made up of the children of the income beneficiaries. *Hartford-Connecticut Trust Co.* v. *Beach,* 100 Conn. 351, 359, 123 A. 921 (1924); *Mitchell* v. *Mitchell,* 73 Conn. 303, 307, 47 A. 325 (1900); 3 Powell, Real Property ¶ 352; 1 Simes & Smith, Law of Future Interests (2d Ed.) § 101. The children surviving the testator received a vested remainder in the assets of the estate subject to open so as to include after born children of the income beneficiaries. *Hartford National Bank & Trust Co.* v. *VonZiegesar,* 154 Conn. 352, 357–58, 225 A.2d 811 (1966); *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 181, 90 A.2d 643 (1952); 1 Simes & Smith, Law of Future Interests (2d Ed.) §§ 114, 146; 2A Powell, Real Property ¶ 276. The minimum membership of the class was determined when the testator died. *Hartford National Bank & Trust Co.* v. *Birge,* 159 Conn. 35, 41, 266 A.2d 373 (1970); *Hartford-Connecticut Trust Co.* v. *Gowdy,* supra, 554–55; 2 Simes & Smith, Law of Future Interests § 654; 3 Powell, Real Property ¶ 365. It closed, by the rule of convenience, at the death of the last income beneficiary because it was at that time that the members of the class were entitled to possession and enjoy-

ment of their gift; their vested remainder subject to open became a present, possessory interest. *Stinson* v. *Palmer,* 146 Conn. 335, 336, 150 A.2d 600 (1959); *Mitchell* v. *Mitchell,* supra; 2 Simes & Smith, Law of Future Interests (2d Ed.) § 634; 3 Powell, Real Property ¶ 364. The creation of a class gift by a testator means distribution is made on a per capita basis. Under such a distribution, the trust assets are divided into as many shares as there are members of the class and one of these shares is allocated to each member. *Hartford-Connecticut Trust Co.* v. *Beach,* supra, 359–60; *Hoadley* v. *Beardsley,* 89 Conn. 270, 283, 93 A. 535 (1915); 3 Powell, Real Property ¶ 368; 3 Restatement, Property §§ 300 and 301.

The first phrase instructs the plaintiff to distribute the estate assets to a class comprised of the income beneficiaries' children. At the time of the closing of the class, the membership consisted of Thrall and Broder's four children. Since distribution to class members is per capita, the first phrase, standing alone, mandates a division of the estate assets into five equal shares for distribution to each of the five class members.

The use of the third phrase, "share and share alike," strengthens the normal preference for per capita distribution among the members of a class. *Hartford-Connecticut Trust Co.* v. *Beach,* supra, 360; 3 Powell, Real Property ¶ 368, pp. 206–207; Black's Law Dictionary (5th Ed.). This phrase takes on particular importance, corroborating indications of a per capita distribution, when the phrases with which it is used also contain language tending to denote a distribution other than a per capita one. 3 Restatement, Property § 300, comment

e, and § 301, comment f. Combining phrases one and three they provide for a gift "to the income beneficiaries' children as a class, share and share alike." Under such a construction, the assets of the estate would be distributed in equal shares to each of the five defendants.

It is the second phrase, "to be divided among them per stirpes," that casts doubt upon the testator's intentions. Because there is no dispute that the word "them" refers to the income beneficiaries' children, we can construe the phrase as follows: "to be divided among the income beneficiaries' children per stirpes." Per stirpes means literally by roots or stock or by representation. Black's Law Dictionary (5th Ed.). Under a stirpital distribution, each deceased member of one generation is represented by his descendants of the next succeeding generation. When a stirpital distribution is directed, it is necessary to determine who are the heads of the respective stirpes. Ibid; 3 Restatement, Property § 301, comment h.

If the heads of the respective stirpes are the children of the income beneficiaries, the phrase "to be divided among the income beneficiaries' children per stirpes" would mean that the assets of the trust would be divided equally among the income beneficiaries' children with a gift to a child who predeceased the closing of the class to be shared by that child's representatives. This manner of distribution is identical to the distribution intended by the testator as manifested by the other two phrases. It is also the construction that Broder's four children urge that we adopt.

A second construction is claimed by Thrall. She argues that the heads of the respective stirpes are

the income beneficiaries, and their children take as representatives. Under such a construction, the assets of the estate would be distributed in two equal parts: one part to be shared by Broder's four children, and the other part to be enjoyed by Thrall. Such a construction mandates a distribution different from the one indicated by the other two phrases.

We are satisfied that the first interpretation reflects the testator's true intent.[2] In determining the intent of a testator, " '[n]ot only must all parts of the will be considered, but each and all its provisions should, so far as possible, be harmonized and given effect.' " *Hoenig* v. *Lubetkin,* 137 Conn. 516, 523, 79 A.2d 278 (1951); *Reaney* v. *Wall,* supra, 667; *Cumming* v. *Pendleton,* 112 Conn. 569, 574, 153 A. 175 (1931); *Security Co.* v. *Hardenburgh,* 53 Conn. 169, 170, 2 A. 391 (1885). Our adoption of the first construction puts into harmony all three phrases. If we adopt the second construction, the testator's intent indicated by his use of the second phrase would be contrary to his intent as manifested by the first and third phrases.

There are other reasons for our acceptance of the first construction. The dispositive sentence "to the children of my brothers B and C per stirpes," is generally interpreted to mean that the children of B and of C are the heads of the respective stirpes. 3 Restatement, Property § 301, comment h, illustration 1. This sentence is similar to the second

---

[2] Since we have adopted the first construction, we do not need to consider whether under the second construction Goldthwaite's death without issue would have resulted in the distribution of his share of the estate assets (1) in accordance with the third part of paragraph nine of Spencer's will; (2) by the laws of intestacy; (3) through Goldthwaite's estate; or (4) in the manner suggested by Thrall.

phrase under consideration in this appeal. We are also influenced by the rule that where a gift to children is to take effect only after the deaths of all the life tenants, so that the whole property goes over together, instead of in separate shares at different times, the remainderpersons take as members of a single class, and hence per capita. See *Smith* v. *Thayer,* 28 Ill. 2d 363, 367, 192 N.E.2d 375 (1963); *Dole* v. *Keyes,* 143 Mass. 237, 239, 9 N.E. 625 (1887); *Duckett's Estate,* 214 Pa. 362, 368, 63 A. 830 (1906). In this case the defendants took possession of the estate assets only at the death of the last income beneficiary.

Finally by using the first construction to interpret the contested language, we put into harmony the second part of paragraph nine, which distributes the estate assets to the income beneficiaries' children, with the third part of the paragraph. The third part provides for a contingent gift to the testator's heirs-at-law in the event the income beneficiaries died "leaving no children." The contingent gift is to occur only if all three of the income beneficiaries died childless. The intent is clear in the third part that the testator viewed the income beneficiaries' children as a group whose share of the trust assets would be determined by their total number and not by the size of a single income beneficiary's family.

To support her construction of the second part of paragraph nine, the defendant Thrall placed great importance on *Hartford-Connecticut Trust Co.* v. *Gowdy,* supra. "In the field of testamentary construction, precedents are usually inconclusive, since the same or substantially similar expressions seldom occur in different wills. . . . Precedents are entitled

to little weight where they do not involve precisely analogous testamentary language, used by testators surrounded by like circumstances at the execution of their wills. . . . Each will must ordinarily stand by itself." *Hartford National Bank & Trust Co.* v. *Harvey,* 143 Conn. 233, 243, 121 A.2d 276 (1956); *Hartford National Bank & Trust Co.* v. *Birge,* supra, 42–43; *Connecticut Bank & Trust Co.* v. *Lyman,* supra, 281.

In *Gowdy,* this court interpreted the following language: "Fifth: I give and bequeath the use and income of all the rest and residue of my estate to my daughters Sarah J. Long and Mattie A. Long to be held by them during their lives *with remainder over to be equally divided between their children in case they have any, per stirpes . . . .*" (Emphasis added.) *Hartford-Connecticut Trust Co.* v. *Gowdy,* supra, 549. At the time the will was executed, Sarah and Mattie were single and had three married sisters. This court decided that this dispositive sentence clearly established Sarah and Mattie, and not their future children, as the heads of two stirpes.

First, we note the dissimilarity of the language in the Gowdy and Spencer wills. Second, the language of the Gowdy will and the circumstances surrounding the testator when he executed it revealed an intent to treat his single daughters, and their future children, differently than he treated his married children and their families. There is no language or circumstance to indicate that Spencer had any intent other than to treat equally the income beneficiaries and their children. The *Gowdy* case has little precedential value for this appeal since the language of the wills and the circumstances surrounding the testators at the time they executed their wills are not precisely analogous.

The answer to the first question reserved to this court is "no"; the answer to the second question is "yes."

No costs will be taxed in favor of either party.

In this opinion the other judges concurred.