[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes to the court seeking the construction of the meaning of the dispositive language contained in an amendment to an inter vivos trust. The integral question has to do with the interpretation of the fifth paragraph of the trust, which was the amended portion of the trust. That paragraph reads as follows:
 FIFTH: Disposition of Residue of Trust Property. The Trustee shall deal with the trust property remaining after compliance with the provisions of Article Fourth above (the "Residuary Trust Property") as follows:
 To hold, invest and reinvest the same and to collect the income therefrom and to pay over to or for her son, RONALD P. MAIER, quarterly or more often, the net income and so much of the principal of said trust estate as maybe necessary, in the sole discretion of the Trustee, for his comfortable maintenance and support during his life.
 Upon the death of her said son, or upon the Settlor's death if he be not then living, to distribute said rest, residue and remainder in equal shares to the Settlor's grandchildren who survive her said son.
 If upon her death the Settlor has no grandchildren who survive her, to distribute said residue to CENTRAL CONNECTICUT STATE COLLEGE, New Britain, Connecticut, to be invested and the net income therefrom, to be employed for the purpose of establishing and maintaining at said School, a scholarship to be known as Agnes P. Maier Scholarship for needy students of high scholastic standing.
The parties have entered into a stipulation of fact for purposes of the case. CT Page 949
Among the stipulated facts are that the amendment to the trust was executed by the Settlor on August 27, 1981. That at that time the son of the settlor, Ronald P. Maier, was married and had no children born or adopted by him. The Settlor died intestate on March 18, 1992, leaving her son, Ronald, who was her only heir at law surviving. At the settlor's date of death, the Settlor had no grandchildren who survived her.
The plaintiff has brought the action seeking advice as to the dispositive intent of the Settlor. The defendant, Ronald Maier, maintains that he is entitled to a life estate in the trust. The defendant, Central Connecticut State College, claims that under the language of the trust, if there are no grandchildren surviving at the Settlor's death, the proceeds of the trust should be immediately distributed to Central Connecticut State College for the charitable purpose expressed in the last sentence of paragraph 5. The court heard the matter and received evidence subject to a ruling on its admissibility by the court.
The court, having reviewed the authorities, hereby strikes all of the evidence given by the witness, Edward Olsen, Esquire, as to that portion of the testimony dealing with the expressed intent of the Settlor, enunciated by her to the witness, Olsen, who was the scrivener of the amendment to the trust. Extrinsic parole evidence of the intent of the Settlor of a trust is inadmissible as to the meaning of the language used. Canaan National Bank v. Peters, 217 Conn. 330 (1991; Heffernan v. Freedman, 177 Conn. 276, (1979).
All the remainder of the testimony dealing with surrounding circumstances by the witness Olsen is admissible, as is the testimony and exhibits of Dr. Ronald Maier, dealing with his relationship and surrounding circumstances with the Settlor. Accordingly, that testimony is admitted.
The plaintiff, Bank of Boston Connecticut, in paragraph 8 of the complaint, has requested that the court address the interpretation of article 5th of the amended trust to give direction to its dispositive effect and address the question whether the amendment to the trust is so ambiguous so as to require the admission of parole evidence to provide guidance regarding the Settlor's intent.
The court is under an obligation to determine the dispositive CT Page 950 intent of the Settlor from the language contained in the instrument itself. Hartford National Bank v. Birge, 159 Conn. 35
(1970). It is the duty of the court to determine the meaning of what the Settlor said and not speculate on what the Settlor may have meant to say. Connecticut Bank Trust Co. v. Lyman,148 Conn. 273 (1961).
The primary objective in construing the trust is to ascertain and effectuate her intent. Dei Cas v. Mayfield,199 Conn. 569, 572, 508 A.2d 435 (1986); Hartford National Bank 
Trust Co. v. Thrall, 184 Conn. 497, 502, 440 A.2d 200 (1981); Kimberly v. New Haven Bank N.B.A., 144 Conn. 107, 113,127 A.2d 817 (1956). In searching for that intent, we look first to the precise wording employed by the Settlor; Hartford National Bank Trust Co. v. Thrall, supra; Hartford National Bank Trust Co. v. Birge, 159 Conn. 35, 42-43, 266 A.2d 373 (1970); see First National Bank of Atlanta v. United States, 634 F.2d 212, 214
(5th Cir. 1981); for the meaning of the words as used by the Settlor is the equivalent of her legal intention — the intention that the law recognizes as dispositive. Wisely v. United States, 893 F.2d 660, 665 (4th Cir. 1990). "The question is not what [s]he meant to say, but what is meant by what [s]he did say." Connecticut Junior Republic v. Sharon Hospital, 188 Conn. 1,20, 448 A.2d 190 (1982); see Hartford National Bank Trust Co. v. Thrall, supra; Warren v. First New Haven National Bank,150 Conn. 120, 123, 186 A.2d 794 (1962); see also Hunter v. United States, 597 F. Sup. 1293, 1295 (W.D.Pa. 1984).
The meaning of the words used by the Settlor in the Fifth paragraph of her trust is not to be deduced by extricating and examining the words in artificial isolation. Lockwood v. Killian, 179 Conn. 62, 70, 425 A.2d 909 (1979); Colonial Bank Trust Co. v. Stevens, 164 Conn. 31, 36-37, 316 A.2d 768 (1972); see Adams v. United States, 401 F. Sup. 1142, 1151 (D.Han. 1975); Read v. Legg, 493 A.2d 1013, 1016 (D.C.App. 1985); First National Bank of Florida v. Moffett, 479 So.2d 312 313 (Fla.App. 1985). The words must be interpreted in light of their context within the paragraph, and with reference to the trust in its entirety. Dei Cas v. Mayfield, supra; Hartford National Bank Trust Co. v. Thrall, supra; see Estate of Bruning v. C.I.R., 888 F.2d 657, 659 (10th Cir. 1989); Estate of McMillan v. C.I.R., 670 F.2d 788, 791 (8th Cir. 1982).
Not only must all parts (of the trust) be considered, but each and all its provisions should, so far as possible, be CT Page 951 harmonized and given effect. Hartford National Bank Trust Co. v. Thrall, supra, 506; see Independence Bank Waukesha (N.A.) v. United States, 761 F.2d 442, 444 (7th Cir. 1985); Greene v. United States, 447 F. Sup. 885, 897 (N.D.Ill. 1978); Connecticut General Life Ins. Co. v. Peterson, 442 F. Sup. 533, 537 (W.D.Mo. 1978); Estate of Sweet, 519 A.2d 1260, 1264 (Me. 1987). A court may not stray beyond the four corners of the trust where the terms are clear and unambiguous. In re Estate of Tashjian,375 Pa. Super. 221, 229-30 n. 3, 544 A.2d 67 (1988); see Connecticut Junior Republic v. Sharon Hospital, supra, 9.
Reading the two trust instruments, the original document (Exhibit A), and the Amendment thereto, and comparing the first sentence in each of the Paragraph 5, it is clear that different language is used in the amended paragraph. When amended, the Settlor removed the prefacing line in the first clause which originally read:
 If upon her death the Settlor has grandchildren who survive her . . . .
In the amended paragraph 5 that first sentence, the prefacing line in the first class, is omitted. The clause now reads:
 To hold, invest . . . for her son Ronald P. Maier . . . during his life
The question then becomes did the Settlor, by removing the condition which existed in the original language of clause 1 of paragraph 5, intend a life estate for her son, irrespective of there being grandchildren surviving. The language in clause one is absolute. If there is question as to the intent of the Settlor by the language employed, it is not evident from this clause.
The clear import of the language employed here is to give her son a life estate irrespective of there being surviving grandchildren. The settlor read and executed the amendment. It is clear that this amendment was prepared at the request of the Settlor and upon her specific instructions. This distinction between the language of the first sentence in the original trust and the language employed in the amended sentence is important in light of several rules of construction of trust language. The language of an instrument must be read in the context of the entire document. Hartford Nat. Bank Co. v. Devitt, 145 Conn. 354, CT Page 952 388. Heirs at law are not to be disinherited unless the intent to do so is clear and strong. Conn. Nat. Bank Trust Co. v. Chadwick, 217 Conn. 260, 274.
If the meaning of conflicting provisions is in doubt, that construction should be adopted which most nearly conforms to the statute of distributions. Conn. Nat. Bank Trust Co. v. Chadwick, 217 Conn. 260, 275; Ansonia National Bank v. Kunkel,105 Conn. 744. There is no ambiguity in the first sentence of paragraph five as amended, and accordingly, the court must make its finding based on the stipulation of fact of the parties and the language employed by the Settlor when read in light of that principle of construction which requires that a trust document constitutes the complete agreement and the court cannot regard any unexpressed intent, but only that intent which is expressed. Rayhol Co. v. Holland, 110 Conn. 516, 524.
It is the finding of the court that the first sentence of paragraph 5 directs the trustee to administer the Agnes P. Maier Trust at her death, for the benefit of her son, Ronald P. Maier, during his life.
The next question has to do with the dispositive effect of clause two (2) and three (3) of paragraph 5.
Clause 2 clearly states that upon the death of her son or upon the Settlor's death, if her son be not living, the residue of the trust is to be divided equally to any surviving grandchildren.
The parties have stipulated that at the time of the Settlor's death, there were no living grandchildren, there having been no children born to the Settlor's son, Ronald P. Maier.
However, clause three of the amended paragraph 5 is completely different and under specific conditions, names Central Connecticut State College as a contingent beneficiary of the residue of the trust. Clauses 2 and 3 must be read together because their language limits the application of the residuary.
Read by itself, clause three (3) is unequivocal and absolute as well. If there are no grandchildren surviving at the Settlor's death, the residue of the trust is to go to Central Connecticut State College. However, if read with clause two (2), it is clear that the Settlor preferred any grandchildren CT Page 953 surviving her and her son to receive the residue of the trust if her son predeceased her. The clear language of clause three and the court so finds that the Settlor intended that the grandchildren would take under clause 2 only if they were alive at the time of her death.
It is also clear that the entire import of clauses 2 and 3 must be read in light of the rule of construction which applies if more than one construction of the meaning of the words is reasonable. The pole star of (testamentary) interpretation is the intent of the (testator) or settlor. Bridgeport City Trust Co. v. Shaw, 115 Conn. 269, 272. The court, in interpreting a document such as a will or trust, must confine its determination to the intent which finds expression in the will or trust document. Mitchell v. Reeves, 123 Conn. 549, 556; Rogers v. English, 130 Conn. 332, 333. The court is looking at the intent expressed guided by the tenet of construction that heirs at law are not to be disinherited unless the intent to do so is clear and strong. Connecticut National Bank and Trust Co. v. Chadwick, 217 Conn. 260, 274.
Where the meaning is in doubt, that construction will be adopted which most clearly conforms to the statute of distributions. Conn. National Bank and Trust Co. v. Chadwick, supra at 275. Here the language of clause three clearly requires that grandchildren be living at the death of the Settlor in order for clause 2 to become operative. This language is not ambiguous or equivocative and cannot be reasonably viewed as ambiguous. To read clause three otherwise is to ignore the clear language of the first line of clause three.
There being a stipulation of fact by the parties that. there are no grandchildren surviving the Settlor at her death, it is also clear that there are no beneficiaries to take under clause two (2) of paragraph 5 as amended. Under the provisions of clause three, in the absence of surviving grandchildren living at the time of the Settlor's death, the residue is to be distributed to the Central Connecticut State College.[1]
However, the paragraph must be read as a whole. All three clauses used by the Settlor must be read as a whole. It is clear that notwithstanding clause 3, the language of clause one clearly states that after compliance with paragraph 4, the Settlor intended the trust to be continued for the benefit of her son for the duration of his life with a power of the trustee CT Page 954 to invade principal for and on his behalf. The Settlor only uses the term residue and remainder individually or as a group in clauses 2 and 3, not in clause 1, and it is significant that the Settlor did not amend paragraph Sixth of the original agreement which requires annual statements to be made by the trustee to the Settlor's son after the Settlor's death showing the trust's financial activity.
It is clear such a statement of activity would be superfluous if the Settlor had not intended that her son have a life estate in the trust upon her death.
The remainder interest, it is clear, was, in the absence of any grandchildren of the Settlor living at the time of her death, to pass to Central Connecticut State College (University) upon the death of the Settlor's son, and the court so finds, in accordance with clause 3 of the Fifth Paragraph of the Amendment of the Trust.
The plaintiff's questions to the court are answered as follows:
A. No. The assets are to be held in trust for the Settlor's son with a vested remainder to Central Connecticut State University in accordance with this opinion.
B. Only so much of the evidence as indicating surrounding circumstances has been admitted by the court to include all exhibits. The court finds there is insufficient ambiguity to require the admission of any other parole evidence.
The court directs that in accordance with the direction of the Settlor, assets of the trust be administered for the benefit of the Settlor's son during his lifetime, and upon his death, the remaining balance of the trust be paid over to Central Connecticut State University to establish the scholarship mandated by clause 3 of paragraph 5 of the trust. It is so ordered.
KOCAY, J.